**UNITED STATES of America, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, Defendant.**

**No. 80 C 5124.**

United States District Court, N.D. Illinois, E.D.

March 5, 1986.

See also D.C., 636 F.Supp. 1050.

Neil H. Koslowe, Special Litigation Counsel, Washington, D.C., for U.S.

Robert C. Howard, Robert M. Weissbourd, James Bradtke, Hartunian, Futterman & Howard, Chtd., Hugh R. McCombs, Jr., David Narefsky, Denise L. Jarrard, Isham, Lincoln & Beale, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

ASPEN, District Judge:

For the reasons that follow, the Court denies the United States' motion to stay proceedings on the Board's bad faith petition and its motion for a protective order with respect to the 1985 bilingual funds proceeding.

██ 1. *Bad Faith.* While the pending appeal is indeed a high priority, it does not justify suspending progress on the bad faith proceedings. As we observed previously in court, we are aware of the enormous workload of the government's lead counsel. But this does not warrant delay in this case. We have also stated on previous occasions our surprise at the Department of Justice's apparent decision that a case of this magnitude does not deserve the attention of more than one of its lawyers. We do not propose to tell the government whether to help Mr. Koslowe. That is its decision. Nevertheless, it does appear unseemly for Mr. Koslowe to offer the enormity of the legal chores which he has personally assumed in this case as a justification for excusing the government from moving expeditiously. The Department is one of the best law offices in the nation and has an abundance of legal talent to assign to Mr. Koslowe's aid should it choose to do so.

██ 2. *Bilingual Proceedings.* We decline to issue a blanket stay of discovery in the bilingual proceedings. The first and main justification offered for the stay is the government's contention that, as a matter of law, the Board's application is not entitled to priority treatment even after our October 15 opinion. The government's briefs reveal a misunderstanding of the "scope" issue, but notwithstanding that misconception, the government's motion is not well taken. The government's argument that the Board does not deserve priority is essentially equivalent to an argument in a motion to dismiss or for summary judgment in a normal civil case. It says it wants to file briefs on a meritorious legal argument which will dispense with the Board's "claim" of priority. It is therefore asking the Court to trust that its legal arguments will be sound, so that curtailing discovery would save everyone time and expense.

First of all, this Court rarely suspends discovery pending a "motion to dismiss." Most such motions are eventually denied. In the rare case where we do stay discovery pending a ruling on a potentially dispositive legal issue, we do so only when we are satisfied that the moving party is likely to prevail. Typically, we have before us the motion relating to the legal issue and at least one or two briefs. In contrast, here we have barely an inkling of the United States' legal theory for "dismissal." It keeps repeating that it has sound arguments that will prevail on the "scope" issue, and that this is a purely legal issue which will make discovery irrelevant. Yet it has given the Court nothing to go on. We are not willing to suspend discovery in a case that is half a decade old [1] where the government (which has generated much delay before) says without any support that it has a good legal case. Nothing has prevented the government and its experienced counsel from doing what lawyers normally do in these circumstances: filing a motion on the merits seeking disposition on its purported legal grounds.[2] If that motion

1. As always, we must consider that delays in this case harm Chicago's public schoolchildren. If the government turns out to be wrong in its legal analysis, these proceedings would no doubt have been set back another month or two.

2. Contrary to what it says in its Reply Brief at 6, we completely disagree with the intimations of the government that the Board and the Court have somehow railroaded the "scope" issue through it, without giving it a chance to argue

and supporting legal material appeared persuasive, perhaps we might consider curtailing discovery. But we will not do so on the bare promise of a good legal argument to come.

In any event, from the record before us, it appears that the government has confused the scope issue with the share issue, and therefore we see even less reason to suspend discovery. The government insists that the relevant bilingual statute prevents priority treatment of the Board's application. At the same time it concedes, *see* Reply Memorandum at 8 n. 2, that the Board's June 17 application "appears to materially assist implementation of the bilingual component of the Board's desegregation plan and is *eligible* for funding (though not 'priority' funding) under the statutory criteria." (Emphasis in original) We think a brief discussion of this issue will both show why a discovery stay is unwarranted and clarify the issues to be resolved.

In our October 15 opinion we held with respect to the "scope" issue that

> [t]he ¶ 15.1 priority extends to any statutory program which could materially further the Board's desegregation plan, so long as a project in that Plan may qualify for funding under relevant statutory criteria.

621 F.Supp. 1296, 1310 (N.D.Ill.1985). The scope inquiry therefore simply involves matching the relevant Board project with statutory criteria. If it satisfies statutory criteria, as well as materially aids the overall desegregation plan, it falls within the ¶ 15.1 priority.[3] Clearly, then, the government's statement in its reply memorandum amounts to a concession on the scope question.[4] It appears to have conceded the crucial statutory eligibility question. Its next sentence underscores both this concession and its confusion: "Thus, if the Court were to hold that the June 17 application is entitled to priority treatment under the consent decree and that all the claimed costs are reasonable, the Secretary would not argue in this Court that funding is nevertheless barred by statutory criteria." This turns the scope question on its head. The government essentially says, if there is to be priority treatment, funding is proper under the statute; our scope holding says that if funding is proper under the statute, there will be priority treatment. Thus, the government is incorrect when it concludes, "[t]his is no concession that the June 17 application is entitled to priority treatment."

This does *not* mean that the government's statutory arguments are necessarily incorrect. What the government apparently plans to argue is that statutory criteria place a ceiling on the amount of funds that can go to any one school district. *See* "United States' Report on Contingent 'Pri-

---

**3.** Of course, we have also held that Board projects must contain reasonable costs. The cost issue can be viewed as a "share" rather than "scope" issue. To the extent a project contains excess costs, the size of a grant may be reduced; alternatively, the project may be revised to justify funding at the original level. But in either case, the Board receives "priority" treatment.
Another view is that the "reasonable cost" requirement is a subset of the "materiality" issue. To the extent its costs are unreasonable, the project no longer "materially furthers" success of the desegregation plan. From this perspective, the cost issue is a part of the "scope" inquiry. However, it is a secondary issue, for if the Board's project fails to meet statutory criteria, no priority applies, and this Court would not be reviewing the cost issue.
But however categorized or described, the cost question is clearly a factual one, warranting discovery, provided the Board's project materially furthers the Plan and satisfies statutory criteria.

The issue on its merits. As we discuss below, it has appeared very straightforward to the Court that the Board would prevail on that argument. But we never firmly held that, precisely because the government had not argued the issue formally. If it indeed had a strong, dispositive legal argument on whether the priority applies here, the government could have filed a motion on that issue with a supporting brief. If discovery is indeed irrelevant, it could have filed the motion and brief regardless of whether discovery was proceeding. Nothing ever prevented it from filing the motion. The opportunity was always there, but it did not avail itself of it.

**4.** Of course, it is not a concession for purposes of appeal on whether our holding on the scope issue in the October 15 opinion was correct. 621 F.Supp. at 1310.

ority' Assessment of Board's 'June 17' Application" at 7–9 ("the January 22 Report"). This is really a *share* question, not a *scope* question, as to which now we of course express no opinion. What the government is really saying is that Congress has capped the Board's *share;* this is not inconsistent with a holding that the Board still gets priority. Recall what "priority" means. The Board must get "the maximum level of available funding," its "equitable fair share." In addition, it will not be denied funding if its material and cost-efficient project meets statutory criteria. The statutory criteria the government refers to may define the parameters of what is the "maximum," but it will not take away the "priority."

Having focused some of the legal context, we return to the question of a discovery stay. First, even if viewed as purely a legal question, the share issue does not warrant a blanket stay of discovery. As noted earlier, we see no reason to do so without even the analogue of a dispositive motion before us. But in any event, we do not see at this point how the share issue is purely a legal one. The statutory criteria cited in the Secretary's January 22 Report, while appearing to place some general cap on grant size, do not define the limit with precision. The criteria merely seem to indicate that the Secretary has additional priorities to balance. Thus, administrative deliberation and discretion would still factor into the decision of how large the Board's grant should be. Putting aside the scope of review question to be discussed below, we are left then with a general share question, which presents factual issues as to whether the Secretary's actual exercise of discretion comported with ¶ 15.1 as construed in previous opinions. This issue does not obviate the need for discovery.

Turning to the scope of review issue, we reject outright the government's assertion that part of our review is governed by an arbitrary and capricious standard. Accordingly, we disagree that discovery should be limited to the procedures it has employed, and we therefore will not stay discovery on account of a limited scope of review.

The government's argument rests on another bifurcation theory. It concedes what it must, that in enforcing the consent decree the Court has a duty to conduct a *de novo* review; but the government argues that review extends only to legal questions and to the procedures the Secretary has implemented to apply the ¶ 15.1 priority. As for complex questions of fact involving the Secretary's expertise in matters of pedagogy or accounting, the government says the Court should apply an arbitrary and capricious standard of review. While some weight and deference should be accorded to the Secretary's individual conclusions in some areas,[5] we cannot and ought not approach this case as a garden variety administrative review. First, the government's proposed bifurcation will doubtless spawn myriad squabbles between the parties over whether various issues should be reviewed *de novo* or under a rationality standard. As a practical matter, this will needlessly multiply issues in a complicated enough case. But more importantly, the analogy to the normal administrative context simply does not wash here. Normally, Congress has delegated certain tasks to an agency with some expertise, and it has expressly provided for a limited judicial review. Review is based on a paper record, and the agency's good faith is usually not in doubt or even relevant. In contrast, we are not reviewing an administrative record pursuant to statute. We are enforcing a consent decree to see if one party to that decree, the government, has both objectively and subjectively ("every good faith effort") complied with its terms. We do this in a context where the government's past good faith is in serious doubt. In this atmosphere of distrust, our review must be thorough and *de novo* to see whether the government has complied with the consent decree. The sanctity of the consent decree

---

**5.** Our previous discussion of the Pipeline issue illustrates that we intend to be deferential in some areas. *See* October 15 opinion, 621 F.Supp. at 1320–22.

deserves no less. And the government cites no case saying otherwise.

We recognize, however that the allegedly suspect party to the decree is a co-equal branch of government. General concerns of comity and separation of powers are in tension with a far-reaching review. Moreover, we appreciate the problem of institutional competence. This is a court, not a board of education, and we are not about to set national educational policy or run amok with a different cost accounting theory than the one the government normally uses. Thus, we no doubt will defer to some of the government's individual decisions where they appear to be reasonable and made in good faith. But we should not defer on a whole category of issues at this early stage of the case. Specifically, we will not curtail discovery in a wholesale fashion into how the government applied the priority and how it arrived at its conclusions. As we have said before, the government's decision-making process *is* the case. *See* May 23, 1985 opinion, 610 F.Supp. 695, 700. We do not see any alternative to reviewing this process *de novo*. Perhaps in deciding some close complex questions of fact, we will give the government the benefit of a reasonable doubt, but we will review the process, and the basis for its decisions, carefully. And discovery on these questions may be thorough.

3. *Conclusion.* The Secretary's motions to stay discovery in both the "bad faith" and "bilingual" proceedings are denied. It is so ordered.

See also D.C., 636 F.Supp. 1046.