Richard F. SPRAGUE, William D. Boham, J. Stanley Gill, James L. McElroy, Jr., John V. Evans, Donald E. Marrs, Gilbert Drucker, John A. McMenamin, Rollie D. Thedford, F. Neil Aschemeyer, David T. Hubbard, William E. Zleit, Denton Gossett, Francis J. O'Byrne, Charles N. Bono, W. Howard O'Bryan, Jr., Paul Harkey, F. Joseph Wieman, Sheldon L. Shepherd, Ralph L. Wampler, Mark W. Haase, Joseph M. May, James L. Garner, Alan L. Jonas, Maxwell Darks and Francis Mayhue, Plaintiffs,

v.

Douglas A. BROOK, in his capacity as Acting Director of the Office of Personnel Management, an agency of the United States of America, Defendant.

No. 92 C 7263.

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1993.

---

1. *See* Docket Entry No. 24 (entered October 5, 1992) and No. 38 (entered December 10, 1992).

Nicholas Joseph Etten and Jeffrey Charles Blumenthal, Foran & Schultz, Chicago, IL, for plaintiffs.

Jack Donatelli, U.S. Attorney's Office, Chicago, IL, for defendant.

### ORDER

NORGLE, District Judge.

Before the court is defendant's motion for a protective order staying discovery. For the following reasons, the motion is granted.

### FACTS

The plaintiffs in this case are twenty-six federal administrative law judges ("ALJs") who have filed this lawsuit seeking declaratory and injunctive relief on behalf of themselves and approximately 754 other ALJs. The plaintiffs allege that Douglas A. Brook, as Acting Director of the Office of Personnel Management (the "OPM"), impermissibly adopted certain regulations in connection with a new pay system for ALJs that was established by the Federal Employees Pay Comparability Act of 1990 ("FEPCA"). According to the plaintiffs, Congress intended FEPCA to eliminate disparities in pay that existed among different classes of ALJs by adopting a pay schedule in which ALJ salaries would be based upon an ALJ's length of service. The plaintiffs claim that, contrary to Congressional intent, the OPM adopted regulations that placed their pay significantly below the pay of other ALJs who had comparable or identical periods of service. Consequently, plaintiffs are challenging the OPM's FEPCA regulation as arbitrary, capricious, unreasonable, and in contravention of the intent of Congress.

In December, 1992, the plaintiffs served the OPM with a request for production of documents in an attempt to acquire information relating to the OPM's issuance and implementation of interim and final FEPCA regulations pertaining to ALJ salaries and classifications. Plaintiffs have also served the OPM with interrogatories, which seek to elicit the identification of persons who are knowledgable of, or participated in, the formulation and approval of the ALJ pay regulations. The plaintiffs' interrogatories also request the identification of persons who, on behalf of the OPM, communicated with mem-

bers of Congress regarding the ALJ pay provisions. Subsequent to being served with plaintiffs' discovery requests, the OPM filed the instant motion to stay discovery pending the resolution of jurisdictional questions raised in the OPM's pending motion to dismiss.

## DISCUSSION

FEPCA was enacted in 1990 as a comprehensive pay reform act for the entire Federal Civil Service and was intended to address recruitment and retention problems and to achieve comparability in pay between federal employees and their nonfederal counterparts on a locality-by-locality basis. *See* H. REP. 906, 101st Cong., 2d Sess. 87–89 (1990). Under FEPCA, the OPM is required to determine the pay level at which each ALJ is placed and the qualifications required for appointment to each level. 5 U.S.C. § 5372(b)(2). Furthermore, the OPM must prescribe the regulations necessary to administer FEPCA requirements. 5 U.S.C. § 5372(c).

On February 14, 1991, the OPM published interim regulations that established a conversion schedule for moving incumbent ALJs into newly established compensation levels. 5 C.R.R. § 930.210(j), (k). One year later, on February 13, 1992, the interim regulations became final. 5 C.F.R. § 930.211. In response to the OPM regulations, the plaintiffs have filed this lawsuit, claiming that the regulations violate the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.* (the "APA"), because they unjustifiably discriminate against ALJs formerly paid at the GS–15 level.

■ Under the APA, a federal agency's action is subject to judicial review if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Section 701(a) of the APA, however, provides an exception to this rule by precluding judicial review of an agency's action if a statute expressly bars review or if the action is committed to an agency's discretion by law. *Board of Trade v. Commodity Futures Trading Comm'n,* 605 F.2d 1016 (7th Cir.1979), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). An action is deemed to be committed to agency discretion when the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. 5 U.S.C. § 901(a)(2); *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). To determine whether a meaningful standard of review is available, the reviewing court must consider "the statutory language, the structure of the statute, any relevant legislative history if the statute is ambiguous, and the nature of the agency action being challenged." *Board of Trustees v. Sullivan,* 965 F.2d 558, 562 (7th Cir.1992).

■ Whether a statute provides a standard whereby a court can conclude that certain regulations are committed to agency discretion is a legal question. *See Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (controversy as to the meaning of a statutory term is ultimately resolved by application of the canons of statutory construction); *cf. Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (action committed to agency discretion when they involve factual disputes). The central issue to the plaintiffs' lawsuit is whether the pay regulation adopted by the OPM is contrary to its authorizing statute. Accordingly, the primary dispute relates to the interpretation to be afforded certain provisions of FEPCA, and that interpretation will not be aided through the discovery now proposed by the plaintiffs.

■ A plaintiff's right to discovery before a ruling on a motion to dismiss may be stayed when the requested discovery is unlikely to produce facts necessary to defeat the motion. *See First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (limitations on general pre-trial discovery not improper if additional discovery would merely amount to a fishing expedition); *Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 674 (7th Cir.1990) (proper to enter order staying discovery pending resolution of qualified immunity claims); *Patterson v. United States Postal Serv.,* 901 F.2d 927, 929 (11th Cir. 1990) (proper to enter order staying discovery pending resolution of motion to dismiss or motion for summary judgment concerning interplay of the ADEA and 5 U.S.C. § 3307); *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir. 1987) (proper to enter order staying discov-

578

ery pending resolution of Rule 12(b) motion); *Feist v. Jefferson County Comm'rs Court,* 778 F.2d 250, 252–53 (5th Cir.1985) (proper to determine first whether plaintiff raised a claim upon which relief could be granted prior to authorizing discovery); *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 797 (Fed.Cir.1984) (proper to enter order staying discovery pending resolution of motion to dismiss). Furthermore, the court will grant a motion to stay discovery pursuant to Rule 26(c) in order to secure the "just, *speedy* and *inexpensive* determination of every action." *Chagnon v. Bell,* 642 F.2d 1248 (D.C.Cir. 1980), *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981) (*citing Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (emphasis in original) (*citing* Fed.R.Civ.P. 1)).

The plaintiffs' discovery requests seek to identify ALJs who might be members of a putative class, to examine reasons for plaintiffs' former classification at the GS–15 level, to explore the legislative history concerning ALJ classification and pay, and to obtain documents referring or relating to the implementation of OPM's FEPCA regulations concerning ALJs. None of the factual information sought by the plaintiffs is relevant to the determination of whether, as a matter of law, FEPCA committed the formulation, promulgation, and implementation of the ALJ pay regulations to the OPM. In light of the issues raised by the OPM in its motion to dismiss, which may dispose of this case in its entirety, and because the plaintiffs' discovery requests are irrelevant to such issues, discovery at this time cannot be justified. The sole result of such discovery, pending resolution of the OPM's motion, would be cost and inconvenience, which would impose an undue burden on the time and resources of the OPM and its agents.

### CONCLUSION

For the foregoing reasons, the OPM's motion to stay discovery pending resolution of its motion to dismiss is granted.

IT IS SO ORDERED.