Richard L. **COHN, and RLC Enterprises, Inc., Plaintiffs,**

v.

**TACO BELL CORPORATION, Defendant.**

No. 92 C 5852.

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1993.

Paul K. Vickrey, Hopkins & Sutter, Chicago, IL, for plaintiffs.

Stanley J. Adelman, Rudnick & Wolfe, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiffs RLC Enterprises, Inc. and its president, Richard L. Cohn, have held a number of restaurant franchises of the defendant, Taco Bell Corp., since 1983. On June 6, 1989 the parties signed a letter of agreement spelling out the conditions under which plaintiffs would be granted two new franchises. Plaintiff's have alleged that defendant has breached implied covenants of good faith in both the letter agreement, and the parties' franchise agreements first, by acting to see that the conditions of the letter agreement would not be met, and second, by planning to build a new franchise which would cannibalize the market of one of plaintiffs' existing restaurants. Plaintiffs' complaint alleges claims of breach of implied covenant of good faith, promissory estoppel and unfair competition.

The court referred this case to Magistrate Judge Bobrick to supervise discovery between the parties. On January 12, 1993, Judge Bobrick issued a memorandum opinion resolving three of the parties' pending discovery motions. Judge Bobrick granted plaintiff's motion to quash subpoenas and to compel, and denied defendant's motion to stay discovery pending resolution of its motion to dismiss. Defendant has objected to that portion of the magistrate judge's order granting plaintiff's motions. Under Fed. R.Civ.P. 72(a), the court will only set aside those portions of the magistrate judge's order found to be clearly erroneous or contrary to law.

### I. The Motion to Compel

Defendant first objects to the order granting plaintiff's motion to compel. Since

that portion of the magistrate judge's order has already been complied with, defendant must perform some fancy footwork to explain why its objection is not moot. It offers two reasons: it was forced to comply with the tight schedule set by the magistrate judge, and the order provides a future definition of what constitutes relevant evidence in the case. Neither of these reasons is convincing. Defendant could have attempted to temporarily avoid compliance with the order by either objecting to the magistrate judge's order denying its motion to stay discovery, or independently moving the court for a stay of the order of January 12. It did neither. Further, relevance for discovery purposes is much broader than relevance for evidentiary purposes, and does not bind defendant at all. *Compare* Fed.R.Civ.P. 26(b)(1) *with* Fed. R.Evid. 401.

■ Be that as it may, the court does not find that this portion of the magistrate judge's order was clearly erroneous or contrary to law. Defendant's first objection to this portion of the order is that the magistrate judge erred in not narrowing the scope of discovery to matters after the date of the letter agreement, June 6, 1989. Defendant's argument is based on a release of prior claims relating to franchise expansion contained in the agreement. First of all, the franchise agreements, which form the basis of plaintiff's claim that defendant is improperly encroaching on the market of its current franchises, contain no such release. Second, plaintiff's claims do not hinge on events occurring before the letter agreement. Event before the date of the letter agreement are discoverable because they may produce evidence leading to an inference of bad faith.

■ Defendant's second objection in this regard is in three parts, attacking the relevance for discovery purposes, of plaintiff's document requests. First, defendant contends plaintiff is not entitled to discovery concerning whether defendant legitimately applied its existing requirements to deny plaintiffs operational approval for expansion. Defendant points out that Illinois law is that good cause is a defense to bad faith, *Dayan*

*v. McDonalds,* 125 Ill.App.3d 972, 81 Ill.Dec. 156, 172, 466 N.E.2d 958, 974 (1 Dist.1984). Obviously though, if defendant did not legitimately give plaintiff's existing franchises poor performance ratings, good cause is not shown.[1]

■ Second, defendant argues that they need not treat all their franchisees the same, therefore discovery as to other franchisees is not relevant. Defendant cites *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies,* 970 F.2d 273, 279 (7th Cir.1992), for this proposition, but this case presents an entirely different context than the preset circumstances. In *Great American,* the franchisee committed material violations of its franchise agreement, and the franchisor sought termination of the agreement. The court held that the franchisor's more lenient treatment of other franchisees who had committed similar breaches of their franchise agreements did not estop the franchisor from relying on its rights under the agreement. *Id.,* at 278–79. Here, the franchisee seeks to use the franchisor's treatment of other franchisee's as evidence that the franchisor is in breach of an implied duty under the agreement. In any event, the significance of this discovery is not so much in its direct comparison of plaintiff's relationship with defendant with that of other franchisees as it is a comparison of all franchisee's relationships with defendant over time. If plaintiffs' relations changed as alleged after June 1989, but other franchisee's relations did not, that is evidence of bad faith. Interestingly, if other franchisee's relations changed the same way as well, that goes to proving plaintiffs' allegation that defendant embarked in a policy of thwarting franchisee expansion. Complaint, at para. 24.

■ Next, defendant claims that it is under no obligation to follow its own internal policies according to either the letter agreement or its franchise agreements, therefore discovery along those lines is uncalled for. Aside from the fact that the case law cited by defendant show agreement with the magistrate judge's ruling that evidence of the par-

1. Defendant would of course also argue, as it has elsewhere, that good cause is shown if plaintiffs failed to meet the financial criteria for expansion. This is still an undecided issue as well.

ties' reasonable expectations are relevant, *Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1015, n. 12 (S.D.Fla.1992), both the franchise agreements and the letter agreement are replete with references to defendant's policies and business judgments. *See* letter agreement at § 3; franchise agreement at §§ 3.2, 3.3, 5.1, 6.0, 6.3, 14.5, 14.6.

■ Finally, defendant argues that the magistrate judge's order should be overturned because its motion to dismiss should be granted. At this time, the court makes no judgments about either the legal sufficiency of plaintiffs' complaint, or defendant's arguments for dismissal under rule 12(b)(6). However, the magistrate judge was absolutely correct in ignoring the motion to dismiss in his ruling on the motion to compel. The grounds for limiting the scope of discovery are listed in Rule 26(b)(1)—legal insufficiency of the complaint is not one of them. If defendant believes discovery should be forestalled by a pending dispositive motion, the appropriate course of action is to ask for a stay. Defendant has done so, the magistrate judge denied their request, and defendant has chosen not to object. Therefore, the merits of the motion to dismiss will not be considered now. *See, e.g.` Dunning v. Chemical Waste Management,* 1992 WL 80964, at *1 (N.D.Ill April 15, 1992).

## II. The Motion to Quash

The magistrate judge granted plaintiffs' motion to quash the defendant's subpoenas of certain accounting firms and financial institutions who are not parties to the case in order to obtain financial information about plaintiffs. The magistrate judge found that these requests were heavy-handed and designed to embarrass plaintiffs, and restricted defendant's discovery attempts in this area to plaintiffs themselves. The magistrate judge also imposed certain other limitations on defendant's discovery requests in this area.

Defendant's first objection is that the magistrate judge has effectively granted partial summary judgment in favor of plaintiffs. The basis for this argument is certain re-marks by the magistrate judge in open court and in the January 12, 1993 order indicating that plaintiffs' ability to qualify for financial approval to receive new franchises under the letter agreement is not an issue in the case. The court finds that this is not the conclusion of the magistrate judge. *See* Opinion, at p. 162. No dispositive ruling has occurred, and this issue is still very much alive in the case.[2]

Second, defendant objects to the magistrate judge's declaration that the discovery constituted an invasion of privacy of plaintiff Cohn and his spouse. Defendant points out that both of the Cohns were the original owners of the franchises, and have both guaranteed plaintiff RLC's performance of its obligations under the franchise agreements. The real point here is that regardless of the magistrate judge's comments, the operative portion of the order are the restrictions it imposes on defendant's discovery. If, after defendant conducts discovery within those restrictions, it finds that grounds for deposing Ms. Cohn exist, it may make a motion to do so.

This brings us to the restrictions themselves, which defendant has termed a "laundry list." The extent of the "laundry list" is that discovery of plaintiff's financial status is limited to the period after June, 1989, to plaintiffs, and to defendant's past methods of financial evaluation of franchisees. Defendant is to articulate and document these criteria when making a discovery request. Interestingly, defendant makes no showing of just how this information would particularly prevent it from seeing material reasonably calculated to lead to the discovery of admissible evidence. Defendants also fail to mention that the January 12, 1993 order allows them to move the magistrate judge for permission to conduct discovery in this area upon non-parties.

■ Instead, defendant makes its own "laundry list" of objections, large and small. First is the objection to the imposition of any kind of discovery restrictions not specifically requested by plaintiffs. The simple answer

---

**2.** Accordingly, this portion of the magistrate judge's order is governed by Rule 72(a), not Rule 72(b).

to this is that the greater power of quashing discovery in toto contains within the lesser power to restrict its scope. Second is the statement that the restrictions "in effect confines Taco Bells' discovery to its contract rights and eliminates any utilization of the normal rights bestowed upon litigants by the discovery provisions of the Federal Rules of Civil Procedure." What does this mean? That the Federal Rules of Civil Procedure allow discovery into non-issues?

■ Third, defendant objects to the time period restriction, pointing out that plaintiff's motion to compel allows discovery into events before June 1989. This is because plaintiffs' discovery goes to the issue of defendant's alleged bad faith, not plaintiffs' ability to fulfill the terms of a June, 1989 agreement.

■ Fourth, defendant objects to having to articulate and document its standard financial criteria for any discovery it seeks. This may make defendant's discovery requests harder to craft, but it is not an unfair limitation as far as the scope of discovery goes. Defendant should not feel it is being spanked by the court for bad behavior, as its objections suggest.

■ Finally, defendant points out that its normal procedure would be to seek third party confirmation of franchisee financial data. This point is well taken, however there is not indication at this time that the magistrate judge would refuse an appropriately timed request of this nature.

For the foregoing reasons, the court finds the magistrate judge's order of January 12, 1993 is not clearly erroneous or contrary to law, and adopts its conclusions.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

This matter is before the court on Plaintiffs' Motions to Compel, Plaintiffs' Motion to Quash Subpoenas, and Defendant's Motion for a Stay of Discovery. The court earlier granted Plaintiff's Motion to Quash Subpoenas, but we include in this memorandum order our rationale for that ruling.

As background for our discovery ruling, a summary of the allegations of plaintiffs' complaint is warranted. In our review we deferentially look to the factual allegations of the complaint in a manner favorable to plaintiffs.[1]

Beginning in 1983, plaintiffs and defendant entered into restaurant franchise agreements with the defendant TACO BELL CORPORATION. By 1988, plaintiffs owned and operated nine such franchise restaurants, all of which operated under the terms of a "Taco Bell" Franchise Agreement ("Agreement"), and which involved a cost to plaintiffs' running into millions of dollars. In addition to the Agreement, the parties' relationship and their mutual obligations were controlled by certain established and communicated "Taco Bell" policies and procedures.

As part of the agreement and pursuant to defendant's policy and procedures, a franchisee had to maintain certain acceptable levels of material and operational conditions at each of the franchise restaurants. Defendant would inspect and rate the restaurants as to various aspects of the restaurant operations, e.g., quality, service, courtesy, and hospitality, and assigned the restaurants a "QSC" score. These QSC scores were utilized by defendant in its franchise operational approval evaluations. In August of 1988, defendant informed plaintiffs that they needed a QSC score of "C" to expand into additional franchise units. In January of 1989, the defendant notified plaintiffs that their QSC scores for the year 1988 were B, B and C. In May of 1989 defendant informed plaintiffs that their QSC operational scores were A, B, A and A.

Sometime in January, 1987, plaintiffs found two locations they believed to be excellent sites for successful franchise restaurants, in Lake Zurich and Gurnee. Plaintiffs informed defendant of these sites in a request to develop a franchise restaurant at each of the locations. As it turned out, the defendant refused to give plaintiffs the go ahead to develop a franchise restaurant at the Lake Zurich site. Defendant claimed that the lo-

---

1. In this proceeding dealing with disputed discovery, we do not evaluate nor make comment, in any manner, upon the legal sufficiency of the complaint.

cation was unsuitable and did not meet its criteria for development, although sometime later, defendant itself opened corporate-owned Taco Bell restaurants at both these mentioned sites. It appears that somewhere near this point in time, in early 1989, there was a change in the relationship between the parties that was inconsistent with their past dealings. Indeed, plaintiffs' reasonable expectations, as developed from defendant's past actions, as well as from defendant's own stated policy and procedures, appeared in jeopardy by certain of defendant's actions taken in early June, 1989. Plaintiffs ascribes a bad faith motive to these later actions taken by defendant.

On June 6, 1989, the parties entered into an agreement ("Letter Agreement") which provided, among other things, that plaintiff would relinquish any claims it had against defendant arising from any disputes concerning prior franchise development commitments defendant made to plaintiffs. The agreement also stated that plaintiffs would be allowed to develop two additional franchise restaurants if plaintiffs met with defendant's "standard financial and operational approval requirements." As we gleaned from the facts alleged, contained in both the complaint and answer, if things were going badly for plaintiffs in their plans to develop additional franchise restaurants in January, 1989, they became exceedingly worse for them immediately after the June 6, 1989 Letter Agreement was executed. Specifically, in that same month, plaintiffs, who had regularly received C's, B's, and A's on their QSC scores, began to get F's. In June, and again in July, defendant notified plaintiffs they had received "F's" on their QSC scores. Additionally, defendant articulated for the first time to plaintiffs that they would need an average QSC score of B in order to obtain any additional franchises. In September, 1989, plaintiffs received notice from defendant, that they were being denied the additional franchises mentioned in the June 6, 1989 Letter Agreement on the basis that plaintiffs did not meet the necessary QSC operational scores.

Additionally, the defendant began to take other actions that were seemingly adverse to plaintiffs' business interests. Prior to the execution of the June 6, 1989 Letter Agreement, when plaintiffs purchased each of their nine franchises, defendant allegedly represented to plaintiffs that there would not be other franchise restaurants placed near any of plaintiffs' franchises that could cause a reduction of sales of more than 15%. Defendant's stated policies and procedures also covered this subject. After June, 1989, however, defendant initiated actions designed to locate a corporate-owned Taco Bell restaurant no less than 2 miles from one of plaintiffs more successful restaurants. A study, tacitly approved by defendant, showed that this corporate-owned restaurant would cause a 27 to 40% reduction of sales to plaintiffs' franchise restaurant. Plaintiffs view these actions as a means of driving franchisee-owned Taco Bell restaurants out of business, and replacing them with corporate-owned businesses.

Plaintiffs seek recovery under the theory of good faith performance of the franchise agreement consistent with the reasonable expectation of parties, specifically alleging defendant detrimentally encroached upon plaintiffs' franchise restaurants. Plaintiffs' suit alleges, among other things,[2] a breach of implied covenant of good faith and fair dealings through: (1) defendant's denial to plaintiffs of the two additional franchises; (2) defendant's establishment of a corporate-owned restaurant within 2 miles of plaintiffs' franchise restaurant, such corporate-owned restaurant causing a 27% to 40% loss of sales to plaintiff; (3) defendant's repudiation of many of its representations to plaintiffs, which induced plaintiffs to enter into other franchise agreements with defendant, and (4) the defendant's arbitrary and capricious repudiation of its own policy and procedures that governed the conduct of the parties from 1983 to 1989.

Plaintiffs have served upon defendant requests for the production of documents, pursuant to Fed.R.Civ.P. 34, which to a large

---

**2.** The complaint also alleges causes of action under the theory of promissory estoppel and unfair competition.

measure inquire into matters, past and present, dealing with defendant's operational evaluation and approval of plaintiffs' franchises, defendant's criteria and prerequisites for expansion, and defendant's enforcement of its own stated policies and procedures against plaintiffs and other franchisees. Defendant objects to this discovery on the basis that the requests, among other things, seek irrelevant matters, calling for information going back as far as 1983. Defendant maintains that the only relevant period of inquiry begins on June 6, 1989, the date of the execution of the Letter Agreement, and that it should not be obligated to produce any documents dating prior to that date.

The courts have recognized the type and nature of the cause of action alleged in plaintiffs' complaint; it is currently a recognized remedy in franchise disputes involving allegations of arbitrary, capricious or bad faith conduct inconsistent with the reasonable expectation of the parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992); *Scheck v. Burger King Corporation*, 756 F.Supp. 543 (S.D.Fla.1991). Implicit within the courts' recognition of this type of cause of action is the understanding that the controversy is fact intensive, usually dealing with allegations of abuses in the franchise relationship, particularly dealing with contract provisions giving the franchisor broad unilateral powers. Plaintiffs' allegations of bad faith conduct inconsistent with the reasonable expectations of the parties involve a broad range of issues concerning matters of motive, past conduct, intentions and the reasonable expectations of the parties. *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958 (1st Dist.1984). As such, and in order to demonstrate the genesis of these expectations, the relevant period of time in question must begin with the year 1983, not June 6, 1989, as defendant suggests. It is with this conclusion that we view plaintiffs' discovery requests, to which defendant imposes objections.

Plaintiffs' request for production of documents 1, 2, 5, 6, 8, 9, and 10, are clearly designed to obtain relevant information delving into defendant's conduct which would establish exactly what plaintiff could anticipate to be defendant's criteria and requirements for expansion of their franchise restaurants. The information sought relates to evidence of the intention of the parties as to their mutual franchise obligations. We find this inquiry, for the period of time requested, well within the scope of being relevant to the subject matter involved in this case under Fed. R.Civ.P. 26.

Requests for production of documents 3, 4, 10, 21 and 22 seek information concerning defendant's denial of operational approval, and are designed to elicit whether such denial was based upon legitimate application of existing requirements or motivated by other reasons. These requests also seek information well within an area relevant to the subject matter of this case.

Request for production of documents Nos. 11, 12, 13, 14, and 15 relate to defendant's decisions or stated policies and procedures relating to building new restaurants near existing franchise restaurants. Again, this discovery relates to the subject matter of the case.

Request for production of documents Nos. 16, 17, 18(a) and (c), 21, 22, 23, and 25 relate to defendant's good faith compliance with its own policies and procedures that underlay plaintiffs', and other franchisees', expectations concerning the successful operation of their franchises. These requests, for the relevant period described above, clearly relate to the subject matter involved in this law suit.

We find that all of defendant's objections to plaintiffs' discovery are without merit. Accordingly, it will be ordered that defendant will make complete response to all of plaintiff's requests for production of documents within fourteen days. Likewise, for the same reasons stated herein, we find defendant's objection to plaintiffs' REQUEST FOR ADMISSIONS OF FACT NO. 19 is also found without merit. Defendant will, pursuant to Fed.R.Civ.P. 36, serve its answer to said request for admission upon plaintiffs with five days.

We turn now to consider defendant's motion to stay, which we find not well-taken. Defendant seeks a stay by reason of its filing of a motion to dismiss, under Fed.R.Civ.P.

12(b)(6), as to three of the four counts contained in plaintiff's complaint. We do not favor defendant's motion because it would essentially delay or prolong discovery, thereby causing management problems which would impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems. *Simpson v. Speciality Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C.1988). Moreover, we simply do not find any justification in delaying discovery because of defendant's motion to dismiss since, among other things, the likelihood of the motion's total success is somewhat speculative. *United States v. Board of Educ. of City of Chicago*, 636 F.Supp. 1046, 1047 (N.D.Ill.1986).

Finally, staying discovery is particularly inappropriate in this case because even if defendant were successful, defendant's motion would not be dispositive of the entire case. We hold to the principal that "motions to stay discovery are not favored and are rarely appropriate where the resolution of the dispositive motion may not dispose of the entire case." *Hovermale v. School Board of Hillsborough County*, 128 F.R.D. 287, 289 (N.D.Fla.1989). Here, defendant's motion to dismiss is directed to three of the four counts of the complaint. While each count is founded upon a distinct legal theory, all of the counts sound in the same alleged basic factual scenario earlier described. We view defendant's motion for a stay purely as a vehicle to stall or delay the inevitable search for the truth, as provided by the federal discovery rules. For these reasons, defendant's motion for a stay will be denied.

Finally, with respect to plaintiffs' motion to quash the subpoenas defendant served on third party financial institutions and accounting firms, we had found significant reason to earlier grant said motion; for the sake of completeness, we now more fully articulate those reasons. We had found that defendant, prior to exhausting appropriate efforts to obtain financial information from plaintiffs themselves, served subpoenas upon five third party financial institutions and two accounting firms at which plaintiffs and Iris Cohn had accounts. These subpoenas required the production of an extensive amount of documents, as well as testimony, which contained highly personal and sensitive financial data concerning Richard J. Cohn and Iris Cohn. According to defendant, as stated in open court, the basis and need for these far-reaching subpoenas, aimed at obtaining the personal and confidential financial information of the named plaintiffs and Iris Cohn, was that the information sought related to the issue of plaintiffs' ability to satisfy defendant's standard franchise financial approval requirements, as set out in the June 6, 1989, Letter Agreement. While plaintiffs' financial ability to qualify for the two denied franchises might well be a genuine issue in this case, we, nonetheless, find that the manner in which defendant proceeds in attempting to obtain the financial information is indeed heavy-handed and quite apparently designed to harass and embarrass both the plaintiffs and Iris Cohn. We reach this conclusion for several reasons.

First, while defendant has continually pointed to the terms contained in the Letter Agreement of June 6, 1989, as sole justification for its far reaching subpoenas, we note that Iris Cohn was not a signatory or party to that Letter Agreement, nor is she a party in this litigation. Accordingly, following defendant's own argument, discovery of any financial information relating to her is absolutely not relevant to the issue of financial ability. Thus, quashing of all the subpoenas would be justified for that reason alone. Secondly, as admitted, defendant's stated sole reason plaintiffs were denied the two franchises was their alleged failure to have "met operational approval." Plaintiffs' financial situation was not one of defendant's stated reasons or justification for the denial. Thus, plaintiffs' financial state appears to be no more than a collateral matter, secondary to the basic issues of the case as raised by the pleadings. That being the case, we do not see the necessity for defendant to require from third party institutions the production of prodigious amounts of highly personal and sensitive financial data concerning plaintiffs, much of which we observe to be duplicative or irrelevant in any event. Furthermore, we do not see any legitimate reason why defendant can not obtain from plaintiffs themselves the necessary and relevant financial

information and documentary data. Indeed, we do not find any reason why defendant can not go about obtaining its desired financial information concerning plaintiffs in the same manner, *and scope*, as it had done on nine earlier occasions when plaintiffs had applied and negotiated for a franchise agreement, had submitted financial data, had undergone a standard financial evaluation by defendant, and was actually awarded the franchises. It is clear that defendant, on those past occasions it performed a standard financial evaluation upon plaintiffs, did not need a subpoena, nor require the same prodigious amounts of information and documents that subject subpoenas now seek. To be sure, plaintiff, in order to prevail in this case as to those counts dealing with denial of the two franchises, will have to demonstrate that in 1989 they were financially ready, willing, and able to proceed on the two offered "Taco Bell" franchise agreements. Accordingly, we conclude that with appropriate use of discovery, under the Federal Rules of Civil Procedure, we do not see any reason why defendant cannot proceed, as it has in the past, in obtaining specific information about plaintiffs' financial capacity and ability to obtain or develop franchises directly from the plaintiffs. We have no doubt this will satisfy defendant's litigation needs. Accordingly, we will allow the defendant to inquire into plaintiffs' finances, but this inquiry will be limited by certain conditions and restricted as follows:

(1) Defendant is given leave to initiate discovery into plaintiffs' financial status for the period beginning June, 1989;

(2) such discovery will be made upon plaintiffs only, and no discovery concerning plaintiffs' finances will be made upon third parties, except by order of court;

(3) the discovery will be in strict conformance with the discovery provision of Federal Rules of Civil Procedure;

(4) the extent of the inquiry, including any request for the production of supporting documents, will not exceed the scope, subject matter, content, or manner of inquiry which the parties had engaged during past occasions when defendant made its standard financial evaluation of plaintiffs as part of a franchise development or acquisition;

(5) the defendant will accompany any request concerning plaintiffs' financial condition with an articulation, in writing, of defendant's financial criteria necessary for standard franchise financial approval for each year beginning 1983 and to present;

(6) defendant is to supplement its submission of the information above described in item 5, with appropriate supporting documentation that reasonably establishes the accuracy of the information provided; and

(7) plaintiff will not be required to produce any financial information it has already provided defendant in response to this discovery.

## ORDER

It is hereby ORDERED that plaintiffs' motion to compel is GRANTED. Defendant will respond to plaintiffs' request for the production of documents within 15 days of the date of this order. Defendant is also ordered to respond to plaintiffs' request for admission No. 19 within 5 days of the date of this order. Defendant's motion for stay of discovery is DENIED. Defendant is further ORDERED to comply with those conditions and restrictions set forth in this memorandum order in any further discovery initiated by it into plaintiffs' financial affairs.

## MEMORANDUM

This memorandum is issued to clarify my January 12, 1993 Order in which I granted plaintiff's motion to compel. It has come to the Court's attention that there may be a misunderstanding as to what the order requires. To avoid possible confusion and eliminate any miscues by the parties, which might have been caused in this particular case by the unfortunate use of the word "respond" in that order, we herewith indicate that use of such word was meant to direct the production of those documents requested in the motion to compel, as set forth in the order.