**BUILDERS ASSOCIATION OF GREATER CHICAGO,**
Plaintiff,

v.

**CITY OF CHICAGO, a Municipal Corporation, Defendant.**

No. 96 C 1122.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1996.

Joel J. Rhiner, Timothy R. Conway, Stein, Ray & Conway, Chicago, IL, for Building Ass'n of Greater Chicago.

Gail A. Niemann, Andrew S. Mine, City of Chicago, Law Dept. Corp. Counsel, Mary Beth S. Robinson, Mary Lang Reames, City of Chicago, Law Dept., Chicago, IL, for City of Chicago.

Clyde E. Murphy, Chicago Lawyers' Committee for Civil Rights Under Law, Inc., Chicago, IL, for Association of Asian Const. Enterprises, Black Contractors United, Federation of Women Contractors, Hispanic American Const. Industry Ass'n., Illinois Ass'n of Minority Contractors and Women's Business Development Center.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Builders Association of Greater Chicago ("Builders Association" or "Association") has brought this § 1983 action against defendant City of Chicago claiming that Chicago's Minority-owned and Women-owned Business Enterprise Procurement program ("M/WBE" program) discriminates against non-minority businesses in violation of the equal protection clause of the Fourteenth Amendment. Currently before the court are defendant's motion for a scheduling order limiting discovery, and a motion to intervene as third party defendants filed by the Association of Asian Construction Enterprises, Black Contractors United, the Federation of Women Contractors, the Hispanic American Construction Industry Association, the Illinois Association of Minority Contractors, and the Women's Business Development Center (collectively, the "applicants"). For the reasons stated below, the defendant's motion to limit discovery is denied, and the applicants' motion to intervene is granted.

### 1. Motion for Scheduling Order

#### a. Background

Plaintiff is an association of general contractors and subcontractors in Cook, Lake and Dupage Counties, Illinois, many of whom do business with the City of Chicago. In February 1996, it brought this action claiming that some of its member firms have been injured by the City of Chicago's M/WBE program, which requires that a certain portion of the money spent on municipal construction projects go to minority-owned or women-owned business enterprises. Plaintiff does not allege that the M/WBE program has caused any direct injury to the association itself. Rather, it claims to have standing to bring suit as the representative of its injured members.

On May 3, 1996, defendant filed a motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1), claiming that the Builders Association had not met the requirements for associational standing laid down in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) and its progeny. On July 30, 1996, the Builders Association filed its first amended complaint, containing more specific allegations to support its claim to standing. In response, on August 13, 1996, the City of Chicago renewed its motion to dismiss for lack of standing. Neither plaintiff nor defendant has yet briefed the standing issue, nor has a hearing been scheduled.

On May 3, 1996, the same day it filed its initial motion to dismiss, the City also filed a motion for a scheduling order limiting discovery to the standing issue. As the parties recognize, our resolution of this motion depends partially on the City's probability of success in its motion to dismiss. Thus, although we do not decide the question of plaintiff's standing at this time, we will examine the relevant legal issues.

b. *Discussion*

■ This court has discretion under Fed.R.Civ.P. 26(c) and (d) to limit the scope of discovery or to order that discovery be conducted in a particular sequence. Such limitations can be appropriate when one of the parties raises a potentially dispositive threshold issue such as a challenge to the plaintiff's standing. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 79–80, 108 S.Ct. 2268, 2272, 101 L.Ed.2d 69 (1988) ("It is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters"); *Landstrom v. Illinois Dep't of Children & Family Services,* 892 F.2d 670, 674 (7th Cir. 1990) (district court did not abuse its discretion by staying discovery pending resolution of qualified immunity claims); *Sprague v. Brook,* 149 F.R.D. 575 (N.D.Ill.1993) (discovery stayed pending resolution of motion to dismiss, where requested discovery would not help resolve the motion).

■ But a motion to stay discovery will not be granted every time a potentially dispositive issue is placed before the court. Although Rules 26(c) and (d) do give the court authority to stay discovery, this authority must be exercised so as to "secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1. Where the court finds that its interference in the discovery process is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere. *See Cohn v. Taco Bell Corporation,* 147 F.R.D. 154, 161–162 (N.D.Ill.1993) (denying motion to stay discovery where the stay would prolong discovery, the success of the motion to dismiss was speculative, and the motion to dismiss would not dispose of the entire case even if successful).

■ Here, a scheduling order limiting discovery to the standing issue is more likely to slow down the progress of the litigation than to speed it up. The City has raised some valid factual questions regarding the Builders Association's standing, and the Association, as the party invoking jurisdiction, will bear the burden of showing that it ′ does indeed have standing to bring this action. *See Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979). Nonetheless, it does not appear that the Association will encounter great difficulty in meeting this burden.

As both parties agree, the requirements for associational standing are those laid down in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), in which the Court held that an association will have standing as representative of its members if

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The City challenges the Builders Association's ability to satisfy the first two prongs of the *Hunt* test. Specifically, it argues that the Association has not shown that any of its members would have standing to sue in their

own right, because it has not pointed to any specific members who have been harmed by the M/WBE program. The City further argues that this litigation is not germane to the Association's purpose because of profound conflicts of interest within the organization, and because the Association has not shown that it has followed its own internal procedures in authorizing the suit. We will examine each of these contentions in turn.

■ In order to establish standing, the Builders Association will have to show that one or more of its members would have standing to bring suit on its own behalf. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. at 343, 97 S.Ct. at 2441; *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975). Thus, the Association will be required to make a showing (1) that one of its members suffered an " 'injury in fact,' by which we mean an invasion of a legally protected interest that is '(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,' " *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993) (citations omitted); (2) a "causal connection between the injury and the conduct complained of," *id.;* and (3) "a likelihood that the injury will be redressed by a favorable decision," *id.*

This requirement should not be very difficult for plaintiffs to satisfy. In *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), the Supreme Court found that an association of contractors challenging a minority set-aside program could satisfy the first prong of the *Hunt* test merely by showing that some of its members had been placed at a competitive disadvantage: "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.... And in the context of a challenge to a set-aside program, the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.*

As *Northeastern Florida Chapter* indicates, the Builders Association will not be required to show that any of its members actually lost contracts as a result of the M/WBE program in order to satisfy the first prong of the *Hunt* test. Rather, it will have to show that the bidding process itself is unequal, and that some of its members have faced barriers not faced by minority and women contractors. The Association will have to go beyond its pleadings and identify particular contractors who have been placed at a disadvantage by the M/WBE program.[1] But beyond this, its burden of demonstrating an "injury in fact" should not be great.[2]

The second requirement of the *Hunt* test, that the Builders Association show that this litigation is "germane" to its organizational purpose, presents a more complex issue. The City claims that this litigation is not germane to the purposes of the Association because there are conflicts of interest within the organization as to its outcome. More specifically, the City argues that some members of the Association are minority or women contractors who would be injured by the invalidation of the M/WBE program, and that others may have an "ideological" interest in maintaining the program. Because of these conflicts, the City argues, the Builders Association is not a proper representative of its members in this case.

■ The mere existence of conflicts within an organization is not sufficient to preclude associational standing. *See United Automobile Workers v. Brock,* 477 U.S. 274, 290, 106

---

**1.** The Builders Association has indicated that some of its members fear that the City of Chicago will retaliate against them if they actively participate in this suit, and that a protective order preventing counsel for the City from divulging the identity of participating members might be necessary. Should the Builders Association require such an order, it may make a motion for one.

**2.** This definition of "injury in fact" implicitly collapses the first two prongs of the traditional standing test into a single inquiry, for the "injury" is defined in terms of its "cause" (the discriminatory statute). Moreover, because the statute itself is the "cause" of the alleged injury, its invalidation would presumably "redress" the injury.

S.Ct. 2523, 2533, 91 L.Ed.2d 228 (1986) (suggesting less drastic ways for the courts to handle intra-organizational conflicts than denying associational standing). only when intra-organizational conflicts are "profound" is associational standing inappropriate. *Retired Chicago Police Association v. City of Chicago,* 76 F.3d 856, 864 (7th Cir.1996). The Seventh Circuit has identified two types of conflict serious enough to be considered "profound": (1) Where an association "seeks standing to directly sue some of its members," *id.;* and (2) where "the association's suit, if successful, would cause a direct detriment to the interests of some of its members and the litigation was not properly authorized." *Id.*[3]

■ The City argues that this case presents a "direct detriment" conflict of interest. Because some of the members of the Builders Association are minority or women contractors, and because others may have economic or ideological interests in maintaining the M/WBE program, this litigation could cause a direct detriment to some Association members. The City is undoubtedly correct in this assertion. As the Builders Association admits, at least some of its members are MBEs or WBEs, who receive a direct financial benefit from the M/WBE program, and would incur economic harm should it be invalidated. *See Maryland Highways Contractors Association, Inc. v. State of Maryland,* 933 F.2d 1246, 1253 (4th Cir.1991) (finding conflict within contractors association where some members were minority contractors who benefitted from set-aside program); *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 605–606 (7th Cir.1993) (discussing *Maryland Highways* ).

But such a conflict will not preclude associational standing when the organization has properly authorized the litigation in accordance with its own internal procedures. *Id.* at 865. When the litigation has been properly authorized, there is less concern that the rights of dissenting members will be compromised or that the association will not provide the "zealous advocacy necessary to be an adequate representative." *Id.* At this point the Builders Association appears to have made a good *prima facie* case that it followed appropriate procedures in authorizing this action. According to the first amended complaint, a quorum of the Association's board of directors met on January 25, 1996, to vote on the litigation, and a majority of those present voted in favor of it. Moreover, the decision to bring this action appears to have been ratified by the Association's members at a special meeting called in accordance with Article XI of the Builders Association bylaws. Given this preliminary showing, the Association appears likely to succeed in establishing standing to proceed with this action.

Finally, we note that there are "less drastic" ways to protect the rights of dissenting members of an association than denying associational standing. *Automobile Workers v. Brock,* 477 U.S. at 290, 106 S.Ct. at 2533. Dissenters' interests may be taken into account "through liberal approval of their intervention in the lawsuit or ... through refusal to preclude subsequent claims by dissenting members." *Associated General Contractors of California v. Coalition for Economic Equity,* 950 F.2d 1401 (9th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). Should the City of Chicago's motion to dismiss ultimately be denied, we will consider alternative means of protecting any dissenters' interests as they are presented to us.

Although we deny the City's motion for a scheduling order, the parties should proceed with discovery related to the Builders Association's standing, so that we may resolve the motion to dismiss as quickly as possible. It appears from exhibits C and D to the Builders Association's "Memorandum in Opposition to the City of Chicago's Motion for a Scheduling Order" that the parties are not so

---

**3.** The Seventh Circuit found a third type of "profound" conflict to exist where the plaintiff Retired Chicago Police Association claimed in its complaint that one of its own officers had breached is fiduciary duty while acting as a trustee for the Policemen's fund. *Retired Chicago Police Ass'n. v. City of Chicago,* 76 F.3d 856, 866 (7th Cir.1996). As the Court recognized, this conflict is a variant of the first type, where an organization attempts to assert associational standing to "go after" one of its own. Such a situation has not arisen in this case.

far apart as to make an agreement on these issues impossible.

### 2. *Motion to Intervene*

The Association of Asian Construction Enterprises, Black Contractors United, the Federation of Women Contractors, the Hispanic American Construction Industry Association, the Illinois Association of Minority Contractors, and the Women's Business Development Center have filed a motion to intervene as third party defendants under Fed. R.Civ.P. 24(a)(2) and 24(b)(2). Each applicant is an association designed to promote the interests of its members, many of whom have applied for city contracts as MBEs or WBEs. Applicants claim that many of their members suffered from discrimination in the award of City construction contracts before the adoption of the M/WBE program, and face the possibility of renewed discrimination should the program be invalidated.

### a. *Intervention as a Matter of Right*

■ An applicant for intervention as a matter of right under Rule 24(a)(2) must satisfy four requirements:

> (1) the application must be timely; (2) the applicant must have a direct and substantial interest in the subject matter of the litigation; (3) the applicant's interest must be impaired by disposition of the action without the applicant's involvement; and (4) the applicant's interest must not be represented adequately by one of the existing parties.

Fed.R.Civ.P. 24(a)(2); *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336. The applicant bears the burden of proving that each of these elements has been satisfied. *American National Bank & Trust Co. v. City of Chicago,* 865 F.2d 144, 146 (7th Cir. 1989). We accept as true the non-conclusory allegations of the applicants' motion to intervene. *Lake Investors Dev. Group v. Egidi Dev. Group,* 715 F.2d 1256, 1258 (7th Cir. 1983).

■ Applicants' motion to intervene is timely and their ability to protect their interest in the M/WBE program could be impeded by the outcome of this case. The only questions are whether applicants have a legally-protectable interest in the program, and whether this interest is adequately represented by the City.

The Builders Association argues that applicants do not have a "direct and substantial interest" in this litigation, because they do not have a constitutional right to the preferential treatment given to them by the M/WBE program. This argument misconstrues the nature of applicants' claim. Applicants are not seeking to protect their constitutional rights, but rather their rights under the ordinance at issue in this case. As MBEs and WBEs, applicants are the direct beneficiaries of the M/WBE program, and will suffer significant financial losses should the ordinance be invalidated. Interests such as this have long been recognized as sufficiently "direct and substantial" to justify intervention under Rule 24(a)(2). *See New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York,* 516 F.2d 350 (2d Cir.1975) (allowing association of pharmacists to intervene in action challenging state regulation prohibiting advertising of drug prices, "since the validity of a regulation from which its members benefit is challenged"). Indeed, applicants' interest in this lawsuit is the mirror-image of the Builder Association's interest: The Association claims that its members are being injured by the M/WBE program, and applicants claim that their members will be injured by its invalidation.[4] We find that

---

4. Like the Builders Association, each applicant is an association of contractors seeking to represent the interests of its members. Thus, the same questions that the City has raised regarding the Builders Association's standing to bring this suit could also be raised with respect to applicants. *See Save the Dunes Council, Inc. v. United States,* 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986) ("interest of a proposed intervenor (under Rule 23(a)(2)) must be greater than the interest sufficient to satisfy the standing requirement"). The Builders Association has not challenged applicants on this basis, however, and the allegations in the motion to intervene are sufficient to satisfy the *Hunt* test. Thus, we find that applicants do have standing to represent the interests of their members.

this interest is sufficient to satisfy Rule 24(a)(2).

 Finally, plaintiffs argue that the applicants' motion should be denied because the City of Chicago adequately represents applicants' interests in this litigation. It is true that, at this point in the litigation, the City shares applicants' goal of preserving the M/WBE program, and appears willing to come forward with evidence of its own past discrimination. But applicants do not need to show, to a certainty, that the City will not fully protect their interests; rather, they need only show that the City might fail to do so, and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Applicants have met this burden. First of all, applicants' interest in maintaining the M/WBE program is different in kind from the City's interest in doing so, for applicants' members have a direct financial stake in maintaining the current program. This difference could manifest itself later in the litigation should the City decide to accept a settlement that would financially harm applicants' members. Secondly, applicants are likely to supplement the City's evidence of past and present discrimination with anecdotal evidence of the experiences of their members. Such evidence will be relevant to our analysis of the government's interest in maintaining the M/WBE program. *See Concrete Works of Colorado v. City and County of Denver,* 36 F.3d 1513, 1520 (10th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *Harrison & Burrowes Bridge Constructors. Inc. v. Cuomo,* 981 F.2d 50, 60 (2d Cir.1992); *Coral Construction Company v. King County,* 941 F.2d 910, 919 (9th Cir.1991), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). For these reasons, the City does not adequately represent applicants' interests in this litigation.

### b. *Permissive Intervention*

 Even if applicants were not entitled to intervene as a matter of right, we would grant them permissive intervention under Fed.R.Civ.P. 24(b)(2). Permissive interven-tion is appropriate where the motion is timely, the applicant's claim or defense has a question of law or fact in common with the main action, and intervention will not unduly delay or prejudice the rights of the original parties. *Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir.1991). As we have noted above, applicants' interest in the litigation is the mirror-image of the Builders Association's interest: they clearly present a "common issue of law or fact". Moreover, the motion to intervene is timely and discovery is not likely to be unduly delayed by applicants' participation, particularly since the evidence they will present would most likely be at issue even without their intervention. The Builders Association will not be prejudiced by applicants' participation in the suit.

### CONCLUSION

For the foregoing reasons defendant's motion for a scheduling order is denied, and applicants' motion to intervene is granted.