76 F.3d 856
 34 Fed.R.Serv.3d 267
 RETIRED CHICAGO POLICE ASSOCIATION, Plaintiff-Appellant,
and
Clinton A. Krislov, Appellant/Cross-Appellee,
and
Krislov & Associates, Ltd., Appellant,
v.
CITY OF CHICAGO, Walter Knorr, Richard M. Daley, Miriam
Santos, and the Policemen's Annuity and Benefit
Fund, Defendants-Appellees,
and
Fireman's Annuity and Benefit Fund,
Defendant-Appellee/Cross-Appellant.
 Nos. 94-1885, 94-2404, 94-2580, 94-2719, 94-2950 and 94-2965.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 11, 1995.
Decided Feb. 13, 1996.
Rehearing Denied April 4, 1996.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. Nos. 90 C 407 & 91 C 6200--Suzanne B. Conlon, Judge.
 
 
 1
 Anne M. Burke, Clinton A. Krislov (argued), Jonathan Nachsin, Lisa E. Waisbren, Krislov & Associates, John J. Lowrey, Lowrey & Smerz, Chicago, IL, for Retired Chicago Police Ass'n.
 
 
 2
 Lawrence Rosenthal, Julian Enriques (argued), Frederick S. Rhine, Benna R. Solomon, Anita K. Modak-Truran, Susan S. Sher, Office of Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago.
 
 
 3
 Martin J. Burns, David S. Allen (argued), Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for Fireman's Annuity and Benefit Fund of Chicago.
 
 
 4
 Louis R. Hegeman, Gould & Ratner, Chicago, IL, for Clinton Krislov.
 
 
 5
 Joseph A. Moore, Lawrence Rosenthal, Susan R. Lichtenstein, Stuart D. Fullerton, Anita K. Modak-Truran, Susan S. Sher, Charles Wilfred Levesque, Office of Corporation Counsel, Appeals Division, Chicago, IL, for Richard M. Daley, Miriam Santos, Walter Knorr, Policemen's Annuity and Benefit Fund, Municipal Employees' Annuity and Benefit Fund of Chicago, Laborers' and Retirement Board Employees Annuity and Benefit Fund of Chicago, Fireman's Annuity and Benefit Fund of Chicago.
 
 
 6
 Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.
 
 
 7
 KANNE, Circuit Judge.
 
 
 8
 This case concerns the propriety of the district court's denial of the associational standing of the Retired Chicago Police Association ("RCPA") to represent its members against the City of Chicago, several city officials, and the Policemen's Annuity and Benefit Fund. Also at issue are the district court's decisions to sanction the attorney for the RCPA, to enforce those sanctions through civil contempt, and to deny supplemental sanctions sought by the Fireman's Annuity and Benefit Fund to compensate it for the costs of enforcing the sanctions award.
 
 
 9
 This is the second time this matter has been appealed to this court. See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584 (7th Cir.1993) ("RCPA I "). Our previous decision, as well as a related case brought in Illinois state court, City of Chicago v. Korshak, 206 Ill.App.3d 968, 151 Ill.Dec. 797, 565 N.E.2d 68 (1990), appeal denied, 139 Ill.2d 594, 159 Ill.Dec. 105, 575 N.E.2d 912 (1991), cert. denied, 503 U.S. 918, 112 S.Ct. 1291, 117 L.Ed.2d 515 (1992), contains many of the background facts of this dispute. In this opinion, we review only those facts pertinent to this appeal.
 
 
 10
 * This case originally began as an action by the RCPA against the City of Chicago and several city officials (collectively the "City") and the city's four pension funds ("Funds"). The RCPA sought relief under 42 U.S.C. § 1983 on the grounds that a settlement entered into by the City and the Funds violated provisions of the United States and Illinois Constitutions. The RCPA further asserted breach of contract, estoppel, and breach of fiduciary duty claims.
 
 
 11
 The settlement that is at the center of this dispute was the result of a state declaratory judgment action brought by the City against the Funds, wherein the City sought both a declaration that it had paid more than it was legally obligated to pay for the health care of the Funds' members and a determination of the City's future obligations. City of Chicago v. Korshak, No. 87 CH 10134 (Chancery Div., Circuit Court Cook County, Dec. 12, 1989). The Funds counterclaimed, and several annuitants successfully intervened. The annuitants were certified as representatives of a class of annuitants that retired from City employment on or before December 31, 1987 (the "Korshak class"). The RCPA was not a party to this litigation; it had made motions to intervene and for class certification, but those motions were denied.
 
 
 12
 Prior to the state court decision, the Funds and the City entered into a settlement under which they agreed to cosponsor legislation that would change the Illinois Pension Code. The legislation, which was eventually enacted, increased the amount the Funds would contribute to the health care premiums of their annuitants, required the City to pay at least 50 percent of the cost of the annuitants' health care premiums through 1997, and made the annuitants responsible for paying the remaining portion of their premiums. The annuitants challenged the fairness of the settlement; they had wanted to compel the City to continue providing the prelitigation health care coverage and to preclude the City from raising the cost of that coverage. The trial court found the settlement to be fair, and the settlement was affirmed on appeal. Korshak, 151 Ill.Dec. at 801, 565 N.E.2d at 72.
 
 
 13
 During the pendency of the appeal, the RCPA filed a class action against the City and the Funds in federal court. The proposed class consisted of the annuitants from the four Funds who had begun participation in the City's Healthcare Annuitant Plan after December 31, 1987 (the end date of the Korshak class) but before August 23, 1989 (the date that the settlement legislation became effective). A group of individuals participating in the Policemen's Fund and a political action committee sought to intervene. The attorney for the RCPA, Clinton A. Krislov, also filed a separate complaint (one nearly identical to the RCPA complaint) on behalf of the same class that had intervened in the Korshak litigation (the "Ryan class"). The two cases were consolidated.
 
 
 14
 The district court dismissed the Ryan class on res judicata grounds and, after denying the RCPA's motion for class certification, dismissed the remainder of the case on the ground that the RCPA lacked associational standing. The district court also denied motions for intervention and class certification filed by the would-be intervenors. The RCPA, the Ryan class, and the would-be intervenors appealed.
 
 
 15
 We affirmed the district court's rulings on all of the issues appealed, except the denial of the RCPA's associational standing. RCPA I, 7 F.3d at 609. We reversed and remanded that issue to the district court. The effect of our affirmance of the denial of class certification was to dismiss three of the four Funds from the litigation. The remaining Fund, the Policemen's Annuity and Benefit Fund, remained in the litigation because members of the RCPA were participants in that fund.
 
 
 16
 While the case was on appeal to this court, the City and the Fireman's Fund filed postdismissal motions for sanctions against Krislov for alleged abuses that occurred during the litigation prior to appeal. The City sought sanctions under both FED.R.CIV.P. 11 and 28 U.S.C. § 1927, and the Fireman's Fund sought sanctions only under Rule 11. The district court referred the matter to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). The magistrate judge issued an order that the City and the Fireman's Fund were entitled to sanctions. Based on submissions from the City and the Fireman's Fund, the magistrate judge issued a report recommending sanctions against Krislov of $42,003.34 to the City and $45,285.00 to the Fireman's Fund. After rejecting objections from Krislov, the district court eventually ordered Krislov to pay all the sanctions recommended by the magistrate judge.
 
 
 17
 The district court's order directed Krislov to pay the sanctions to the City and the Fireman's Fund by February 22, 1994. After Krislov failed to meet that deadline, as well as successive deadlines, the district court held him in civil contempt. Krislov paid the sanctions and accrued fines after the district court granted a writ of body attachment filed by the Fireman's Fund. The district court later denied the Fireman's Fund's request for supplemental sanctions for the costs it incurred in enforcing the sanctions award.
 
 
 18
 After remand of the associational standing issue, the district court again entered an order dismissing the case for lack of associational standing. The RCPA filed a FED.R.CIV.P. 59(e) motion to alter or amend the judgment,[1] which the district court denied.
 
 II
 
 19
 Prior to reviewing the RCPA's challenge to the district court's decision to dismiss the case for lack of associational standing, we must first ascertain the procedural mechanism by which standing was denied. The RCPA and the City characterize the district court's decision as a grant of summary judgment. The Policemen's Fund argues that the district court dismissed the case for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1). We agree with the latter characterization.
 
 
 20
 After raising the issue sua sponte, the district court did not specify the provision under which it was dismissing the case for lack of associational standing. However, the record leads us to infer that the district court intended to dismiss the case pursuant to Rule 12(b)(1). The only previous challenge to the RCPA's standing had been brought pursuant to a Rule 12(b)(1) motion, and the district court continually referred to its decision disposing of the case for lack of associational standing as a dismissal, rather than a grant of summary judgment. As a result, we shall treat the district court's decision as a dismissal pursuant to Rule 12(b)(1).
 
 
 21
 We review a district court's decision to grant or deny a motion to dismiss for lack of standing de novo. Doe v. County of Montgomery, Ill., 41 F.3d 1156, 1158 (7th Cir.1994). Where the district court's resolution of a standing question involved disputed factual matters, we will accept the district court's factual findings unless they are clearly erroneous. Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 594 (2d Cir.1993); Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 22
 In ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint and must draw all reasonable inferences therefrom in favor of the plaintiff. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir.1993). The plaintiff bears the burden of establishing that it meets the required elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with "competent proof." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). We have interpreted "competent proof" as requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists. NLFC, 45 F.3d at 237.
 
 III
 
 23
 As we noted in RCPA I, the general rule of standing is that "an injured party 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " 7 F.3d at 600 (quoting Warth, 422 U.S. at 499, 95 S.Ct. at 2205). This rule flows from a concern that third parties will not adequately represent the individuals whose rights they seek to vindicate. See Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976). The doctrine of associational standing is an exception to the general prohibition of representational standing. In order to obtain associational standing, an organization must meet the three-prong test set forth in Hunt v. Washington State Apple Advertising Comm'n:
 
 
 24
 [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 25
 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); see also Sanner v. Board of Trade, 62 F.3d 918, 922 (7th Cir.1995).
 
 
 26
 On remand, the district court denied the RCPA associational standing on three grounds. First, the district court held that the RCPA had failed to prove that it had sufficient resources or expertise to adequately litigate the dispute. Second, the district court held that the RCPA had failed to meet the second prong of the Hunt test because its representation would involve "profound" conflicts of interest that were not amenable to a remedy short of denying standing and the RCPA had failed to show that these conflicts were overcome by authorization of its membership. Third, the district court held that, in addition to precluding standing under the second prong, the profound conflicts of interest caused the RCPA to fail the third prong "because there is not complete identity between the interests of the organization and its members."[2] The district court denied the RCPA's Rule 59(e) motion to alter or amend the judgment, in which the RCPA attempted to show that the litigation was properly authorized. The RCPA appeals the court's decision to deny standing and its decision to deny the Rule 59(e) motion.
 
 
 27
 * Initially, we must disagree with the district court's determination that the RCPA should be denied associational standing because of a lack of resources or expertise. The Hunt test does not contain a requirement that an association maintain a certain level of expertise with regard to the subject matter of the litigation, nor does it require an association to have a certain amount of resources. To the extent the Supreme Court mentioned associations' expertise and resources in International Union, UAW v. Brock, 477 U.S. 274, 289, 106 S.Ct. 2523, 2532, 91 L.Ed.2d 228 (1986), it did so in recognition of the fact that because preexisting associations have access to some level of expertise and resources they present more attractive vehicles for representational litigation than class actions. We do not believe that the Court in mentioning associations' expertise and resources intended to create an additional requirement that an association must maintain some threshold level of expertise and resources in order to qualify for associational standing, and we see no merit in adding such a requirement. Consequently, the district court erred in denying the RCPA associational standing on this ground.
 
 B
 
 28
 The district court's second basis for denying the RCPA associational standing was that profound conflicts of interest caused the RCPA to fail the second prong of Hunt: that "the interests it seeks to protect are germane to the organization's purpose." 432 U.S. at 343, 97 S.Ct. at 2441. In Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n, 830 F.2d 1374 (7th Cir.1987), we held that an association fails to meet the second prong where there is a serious conflict of interest between the organization and its members. We found that "[b]ecause the interests which SSBR seeks to protect by maintaining this action do not reflect and are actually at odds with the interests of some of its members, they certainly cannot be said to be 'germane' to SSBR's overriding purposes, and SSBR cannot invoke representational standing as a basis for suing the defendants." Id. at 1381.
 
 
 29
 Prior to the first appeal in this case, the district court had denied class certification, in part, on the grounds that two conflicts of interest made the RCPA an inadequate class representative. The district court relied primarily on these same two conflicts in finding that the RCPA failed the second prong of Hunt.[3]
 
 
 30
 The first conflict of interest considered to be profound by the district court is that some of the RCPA's members, namely widows, pay less for their health care premiums under the settlement legislation than they would if the RCPA were successful in overturning the settlement and returning its members to the prelitigation premium payment relationship. The district court found a second profound conflict in the fact that Richard Jones, an elected RCPA official, voted for the settlement while he was a trustee of the Policemen's Fund, and the RCPA argues in its claim against the Policemen's Fund that the trustees breached their fiduciary duty when they approved the settlement.
 
 
 31
 We commented in RCPA I that the district court would likely encounter these conflicts again in determining whether the RCPA qualified for associational standing. And although we noted the validity of the first conflict and the fact that the second conflict was "troublesome" when we affirmed the denial of class certification, RCPA I, 7 F.3d at 598, we instructed the district court that "the inquiry with respect to associational standing, while similar, is not identical [to the class certification analysis]." Id. at 607. Specifically, class certification is improper if the members merely have antagonistic or conflicting claims; only where the litigation would result in "profound" conflicts of interest is associational standing inappropriate. Id. at 598.
 
 
 32
 In RCPA I, we noted that there are at least two types of conflicts that will be considered profound and preclude associational standing. First, a profound conflict arises where an association seeks standing to directly sue some of its own members. RCPA I, 7 F.3d at 606; see Southwest Suburban, 830 F.2d at 1380-81. Second, a profound conflict arises where the association's suit, if successful, would cause a direct detriment to the interests of some of its members and the litigation was not properly authorized. RCPA I, 7 F.3d at 606. Only the second type of conflict is at issue in this case.
 
 
 33
 Although we have not addressed a direct-detriment conflict of interest, it is exemplified by the facts in Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246 (4th Cir.), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991). In that case, the association seeking standing was attempting to invalidate the Maryland Minority Business Enterprise statute. The Fourth Circuit noted that the fact that some members of the association benefited under the MBE statute, while others would benefit if the statute were invalidated, caused a conflict of interest. Id. at 1253. In reaching the conclusion that the conflict of interest precluded the association from asserting associational standing, the court also focused on the fact that there were irregularities in the authorization of the litigation. Id.
 
 
 34
 In RCPA I, the question of whether the conflicts of interest in this case preclude associational standing was not before us; our discussion of the issue was only intended to provide the district court with some guidance for determining the question on remand. As a result, we did not describe the concerns underlying a direct-detriment conflict of interest, nor did we detail how evidence that the litigation was properly authorized will impact an association's ability to assert associational standing in the face of this type of conflict.
 
 
 35
 A direct, detrimental effect to some members' interests constitutes a conflict of interest in the associational standing context because it implicates two of the concerns that question the appropriateness of representational standing. First, because the litigation, if successful, would actually harm some members' interests, there is a concern that the litigation is not germane to the association's purposes. See Southwest Suburban, 830 F.2d at 1381. Second, the fact that the litigation, if successful, would harm some members' interests raises a concern that the association will not be fully committed to the litigation and, as a result, will not pursue the litigation with the zealous advocacy necessary to be an adequate representative. These concerns are allayed where the litigation was properly authorized in accordance with the association's procedures. Under such circumstances, the membership has affirmed that the detriment to some members' interests does not render the litigation outside the germane interests of association, and a court can be assured that the association will pursue the litigation with the strong advocacy and persistence necessary to be an effective representative. See generally Duke Pwr. Co. v. Carolina Env't Study, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978) (prudential limitations on standing require that a court be assured "that the most effective advocate of the rights at issue is present to champion them"); National Collegiate Athletic Ass'n v. Califano, 622 F.2d 1382, 1391-92 (10th Cir.1980) (where it is unclear whether an association's members support the litigation, the association cannot assert associational standing absent the documented support of a majority of its members).
 
 
 36
 The plaintiff bears the burden of proof that it meets the required elements of standing. Lujan, 504 U.S. at 561, 112 S.Ct. at 2136. Consistent with that burden, where a defendant asserts that a direct-detriment conflict of interest precludes an organization from asserting associational standing, the organization bears the burden of coming forward with competent proof to rebut that challenge. See McNutt, 298 U.S. at 179, 56 S.Ct. at 785. In light of our discussion above, a plaintiff can defeat a direct-detriment conflict challenge by showing that the litigation, if successful, will not cause a direct detriment to any of its members or that the litigation was properly authorized. We now turn to the conflicts at issue in this case.
 
 
 37
 * The first conflict of interest considered "profound" by the district court--detriment to the interests of the widows--is directly analogous to the conflict presented in Maryland Highways. Like the minority contractors in Maryland Highways, the widow members of the RCPA will be directly harmed if the RCPA is successful in invalidating the settlement legislation and requiring the City to provide prelitigation coverage at prelitigation cost; the widows would lose the subsidy provided by the settlement legislation, and their premiums would increase from seventeen dollars per month to twenty-one dollars per month. Consequently, the district court was correct in finding that this situation presented a potentially profound conflict of interest. We also agree with the district court's subsequent conclusion that, because the RCPA did not offer any evidence that the litigation was properly authorized, the conflict of interest presented by the direct detriment to the widows' interests was in fact profound.
 
 
 38
 The district court went on to consider whether "other approaches less drastic than denying group standing" could protect the interests of the members from the dangers presented by this conflict. RCPA I, 7 F.3d at 607. Instead of considering the conflicts separately, the district court aggregated them for purposes of this inquiry. We find this analysis problematic because each individual conflict may only impact a portion of the litigation. For instance, the conflict of interest posed by the widows would not affect the RCPA's ability to competently pursue the breach of fiduciary duty claim against the Policemen's Fund. Under that claim, the RCPA is arguing that the Policemen's Fund should be obligated to pay the full cost of the annuitants' share of their health care premiums, a claim that, if successful, would seemingly benefit all members.
 
 
 39
 Considering separately the conflict caused by the potential direct detriment to the widows' interests, we believe that it may only be resolved by excising from the litigation the claims giving rise to that conflict. This is the case because in the face of concerns that the litigation is not germane to the association's interests and that the RCPA may not act as an adequate representative, the RCPA has failed to meet its burden of showing that it has standing to pursue those claims. For this reason, the district court was correct in denying the RCPA associational standing to pursue its claims against the City.
 
 
 40
 In its challenge to the district court's determination of this issue, the RCPA admits that it failed to make a showing that the litigation was properly authorized prior to the district court's decision to dismiss the case, but it argues that its Rule 59(e) motion contained competent proof of authorization. However, whether the district court should have granted the Rule 59(e) motion and considered the proof appended thereto is a separate question from whether the district court erred in dismissing the case for lack of standing because of its finding that the potential harm to the interests of the widows qualified as a profound conflict of interest. Looking at the evidence before the district court at the time it decided to dismiss the case, we believe the district court was correct in finding that, because there was no evidence that the litigation was properly authorized, the conflict of interest posed by the widows precluded the RCPA from asserting associational standing against the City.
 
 2
 
 41
 The second conflict of interest considered "profound" by the district court does not fit into either of the two types of conflicts we have previously found to be profound. The conflict arises from the fact that the RCPA, in alleging that the Policemen's Fund trustees breached their fiduciary duty in voting for the settlement, challenges the decision of Richard Jones, currently an RCPA officer, who voted for the settlement while a Policemen's Fund trustee. Although we previously noted that this particular conflict was "troublesome" in the class action context, RCPA I, 7 F.3d at 598, we have not considered whether this type of conflict presents a profound conflict.
 
 
 42
 In order to determine whether this situation presents a new type of profound conflict of interest, we turn to the two policies that limit the scope of associational standing in the face of conflicts of interest: an association must be an adequate representative of its members' interests, and the litigation must be germane to the association's interests. See Southwest Suburban, 830 F.2d at 1381; see also Singleton, 428 U.S. at 114, 96 S.Ct. at 2874 (in order to assert representational standing, plaintiff must be an effective representative).
 
 
 43
 In keeping with these two policies, we find that this conflict of interest presents a new type of "profound" conflict. We reach this result because the RCPA, as a representational plaintiff, actually makes the day-to-day decisions regarding the representational litigation. As the second highest ranking officer in the RCPA,[4] Jones is one of a very few individuals involved in setting the priorities and strategy of the litigation. In light of the importance of such decisions and the fact that the litigation includes a claim that Jones breached his fiduciary duty (which he disputes) we find that the ability of the RCPA to adequately represent its members with respect to that claim is adversely affected. We believe that the requirement that the litigation be germane to the association's interests is similarly frustrated in this instance. Challenging the decision of an association officer is substantively similar to the situation in Southwest Suburban, where some of the association's members were named defendants. Southwest Suburban, 830 F.2d at 1380. In both situations, the associations are attempting to use representational standing as a means to go after their own, something we have already held cannot be germane to an association's purposes. Id. at 1381.
 
 
 44
 Now that we have found this conflict to be profound, we are again faced with the question of whether "other approaches less drastic than denying group standing" can protect the members' interests from the dangers presented by this conflict. RCPA I, 7 F.3d at 607. We believe this conflict cannot be negated by a remedy directed at a discrete group of the association's members because all of the association's members are at risk of being negatively affected by the subtle (and potentially not so subtle) impact of this conflict on the breach of fiduciary duty claim. As a result, we find that this conflict may only be resolved by excising it from the litigation. We will, therefore, affirm the district court's decision to deny the RCPA standing to assert the breach of fiduciary duty claim against the Policemen's Fund.
 
 C
 
 45
 The district court also denied associational standing on the ground that the two conflicts of interest noted above precluded the RCPA from meeting the third, "individualized participation" prong of Hunt because there would not be "complete identity between the interests of the organization and its members." However, as we made clear in Southwest Suburban and RCPA I, the proper prong under which to consider the impact of conflicts of interest is the second, "germaneness" prong. RCPA I, 7 F.3d at 606-07; Southwest Suburban, 830 F.2d at 1381. Under that prong, as long as the litigation is germane to the purpose of the organization and any conflicts of interest are not profound, the association may still have standing even if some members dissent from the decision to litigate or the theory of the litigation. The third prong is concerned with whether each member's participation in the litigation would be required--a question we discussed at length and resolved in favor of the RCPA in RCPA I. 7 F.3d at 601-03, 607 n. 27. Thus, the only "identity" requirement is found within the second prong, and when that prong is satisfied there is no room to deny standing because of a conflict of interest under the third prong.
 
 IV
 
 46
 The RCPA also appeals the district court's decision to deny its Rule 59(e) motion, in which it sought to offer competent proof that the litigation was properly authorized. The district court denied that motion because it found the RCPA had failed to show that the court had made a clear error of law or fact and because the evidence of authorization was available at the time the RCPA filed its brief in support of associational standing. The district court went on to find that even if it did grant the motion, the evidence offered by the RCPA was insufficient to prove that the litigation was properly authorized.
 
 
 47
 A Rule 59(e) motion cannot be used to present evidence that could and should have been presented prior to entry of final judgment. Green v. Whiteco Indus., Inc., 17 F.3d 199, 202 n. 5 (7th Cir.1994). We review a district court's decision to grant or deny a Rule 59(e) motion for abuse of discretion. Souter v. Int'l Union, UAWA, 993 F.2d 595, 599 (7th Cir.1993).
 
 
 48
 The evidence of authorization submitted by the RCPA in its Rule 59(e) motion consisted of the deposition testimony of RCPA President John Pierce. Pierce testified that: (1) the decision to file the lawsuit against the City and the Funds was made by the RCPA board; (2) following the board's approval, the decision to litigate was posed to the members at the next regular membership meeting; and (3) a majority of the members present, by hand vote, voted in favor of the litigation. Pierce noted that he did not recall the date of the meeting or the number of members present. However, he stated that information was available in the records of the association.
 
 
 49
 The RCPA has a colorable argument that the district court abused its discretion in denying the Rule 59(e) motion. A specific challenge that "[t]he RCPA has never demonstrated that its membership has authorized its action in this litigation" was not raised until the Policemen's Fund's brief in opposition to associational standing. That is problematic because, in accord with the district court's briefing schedule, the brief of the Policemen's Fund was filed after the RCPA's brief, and the RCPA was not afforded an opportunity to respond to that challenge through a reply brief. However, even if the district court abused its discretion in denying the motion, it was correct in its alternative finding that the evidence submitted by the RCPA was insufficient to constitute competent proof of authorization.
 
 
 50
 Although Pierce testified as to the procedure the RCPA followed in authorizing the legislation, he failed to identify whether a quorum was present at the meeting at which the litigation was voted upon. Without that information, we are unable to determine whether the membership vote was valid. The RCPA could have filled this self-admitted gap in Pierce's testimony by attaching an affidavit to its Rule 59(e) motion setting forth the number of members present at the meeting and whether that number constituted a quorum. As Pierce noted in his deposition, that information was available in the RCPA's records. Its failure to submit an affidavit (or other competent evidence) detailing whether a quorum was present is fatal. Because the RCPA did not set forth competent proof that the litigation was properly authorized in its Rule 59(e) motion, we find that the district court did not err in denying that motion. See Deutsch v. Burlington Northern R. Co., 983 F.2d 741, 745 (7th Cir.1993), cert. denied, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993).
 
 V
 
 51
 Clinton A. Krislov argues that the sanctions imposed upon him pursuant to FED.R.CIV.P. 11 and 28 U.S.C. § 1927 are invalid for both procedural and substantive reasons. We do not reach the propriety of the sanctions because we believe that the district court applied the wrong standard of review to the magistrate judge's determinations.
 
 
 52
 The district judge referred the City's and Fireman's Fund's motions for sanctions against Krislov to a magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(A).[5] In his revised report, the magistrate judge recommended that sanctions be entered against Krislov in favor of both defendants. Krislov requested that the district court reconsider the magistrate judge's recommendations. The district judge "adopted" the magistrate judge's recommendations after reviewing them for clear error. See 28 U.S.C. § 636(b)(1)(A); FED.R.CIV.P. 72(a). One of the bases on which Krislov challenges the sanctions award is that the district judge erred in not applying a de novo standard of review to the magistrate judge's recommendations. We agree.
 
 
 53
 In Alpern v. Lieb, 38 F.3d 933 (7th Cir.1994), we held that a district judge may not refer a dispute regarding sanctions to a magistrate judge under § 636(b)(1)(A) because the grant or denial of a request for sanctions constitutes a dispositive matter. 38 F.3d at 935. We reasoned that "[a]lthough an award under Rule 11 is conceptually different from a decision on the merits, it requires one party to pay money to another; the denial of a request for sanctions has an effect similar to the denial of a request for damages. The power to award sanctions, like the power to award damages, belongs in the hands of the district judge." Id.
 
 
 54
 The City and the Fireman's Fund argue that Alpern is inapposite for two reasons. First, they argue that, unlike in Alpern, the motions for sanctions referred to the magistrate judge in this case were a "pretrial matter." In order to avoid the fact that the motions for sanctions were not referred to a magistrate judge until after final judgment dismissing the RCPA's complaint, they argue that our remand of the associational standing question in RCPA I "resuscitated" the pretrial nature of the sanctions because the magistrate judge did not recommend, and the district court did not adopt, a specific amount of sanctions until after our remand of the standing issue.
 
 
 55
 Even if we found merit in the defendants' resuscitation argument, their attempt to distinguish Alpern on the grounds that this case concerns a pretrial request for sanctions is unavailing. Although the facts of Alpern concerned postdismissal sanctions, our analysis encompassed all sanctions requests, whether pre- or postdismissal. We specifically rejected the reasoning of the court in Maisonville v. F2 America, Inc., 902 F.2d 746 (9th Cir.1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 674, 112 L.Ed.2d 666 (1991), which held that sanctions requested prior to a decision on the merits could be referred to a magistrate judge under § 636(b)(1)(A), in favor of the reasoning that a request for sanctions, regardless of when made, is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3). Alpern, 38 F.3d at 935 (citing Estate of Conners v. O'Connor, 6 F.3d 656 (9th Cir.1993); Bennett v. General Caster Serv. of N. Gordon Co., 976 F.2d 995 (6th Cir.1992)).
 
 
 56
 The defendants also seek to distinguish Alpern on the ground that it concerned sanctions against a party and this case concerns sanctions against a party's attorney. Specifically, they argue that clear error review is proper because, as a motion against an attorney, the motion for sanctions is "not dispositive of a claim or defense of a party." FED.R.CIV.P. 72(a) (emphasis added). While they are correct that an attorney does not become a party by virtue of being the subject of a motion for sanctions, see Frazier v. Cast, 771 F.2d 259, 262 (7th Cir.1985), the City's and Fireman's Fund's argument misapprehends the nature of a magistrate judge's authority under § 636 and Rule 72.
 
 
 57
 Both § 636 and Rule 72 distinguish the proceedings a magistrate judge may conduct (and whether a district judge may defer to the magistrate judge's conclusions) by the type of matter involved, not whether the matter involves parties. Rule 72 distinguishes the magistrate judge determined matters that will receive de novo or clear error review by whether the matter is dispositive or nondispositive. Furthermore, throughout § 636(a)-(b)(1)(C), the term "party" is only mentioned twice and then not in a way that distinguishes between matters that will receive de novo or clear error review. Consequently, we hold that it is the type of matter, not the status of the entity who is the subject of the matter, that controls for purposes of determining the provision under which a district judge may refer a matter to a magistrate judge and the extent to which a district judge may defer to the magistrate judge's determinations.
 
 
 58
 The fact that an attorney was the subject of a sanctions request does not change the fact that resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations de novo. Because that did not occur here, we will vacate the award of sanctions and remand the matter for a review of the proposed sanctions under the proper standard.
 
 
 59
 In light of our decision to remand the issue of whether to award sanctions, we do not decide the issue raised by the Fireman's Fund: whether the district court abused its discretion in not awarding additional sanctions for the costs of enforcing the sanctions order. The district court can revisit this issue on remand if it finds that sanctions are warranted.
 
 VI
 
 60
 Krislov challenges the district court's decision to hold him in civil contempt for failing to pay the Rule 11 and § 1927 sanctions by the April 15, 1994, deadline set forth in the district court's March 28, 1994, order. Specifically, Krislov argues that under FED.R.CIV.P. 69(a) the district court should have used a writ of execution rather than a civil contempt order to enforce the sanctions. However, as the City and the Fireman's Fund correctly point out, although Krislov challenged the order on other grounds, he failed to raise this argument before the district court. By raising this argument for the first time on appeal he has forfeited it. Koffski v. Village of North Barrington, 988 F.2d 41, 44 n. 7 (7th Cir.1993); United States v. Harty, 930 F.2d 1257, 1261-2 (7th Cir.), cert. denied, 502 U.S. 894, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991). Krislov's response that bringing this argument below would have been futile is unavailing. He made several other arguments against the contempt order (none of which he asserts on appeal), and he offers no reason why he could not also have made this argument. Consequently, he has forfeited it, and we will not decide whether the district court erred in enforcing the sanctions order through civil contempt.
 
 
 61
 Our determination that the sanctions were invalid does not dictate the conclusion that Krislov should not have been held in contempt for the failure to pay those sanctions within the time ordered. " 'It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.' " Walker v. City of Birmingham, 388 U.S. 307, 314, 87 S.Ct. 1824, 1828, 18 L.Ed.2d 1210 (1967) (quoting Howat v. Kansas, 258 U.S. 181, 190, 42 S.Ct. 277, 280, 66 L.Ed. 550 (1922)). Contra Thomassen v. United States, 835 F.2d 727, 732 (9th Cir.1987).
 
 VII
 
 62
 As a result of our decision today, the district court's order dismissing the RCPA for lack of associational standing is AFFIRMED. The award of sanctions is VACATED and REMANDED for further proceedings consistent with this opinion. Krislov's request for attorney's fees and costs incurred in defending against the sanctions is DENIED. The district court's order holding Krislov in contempt is AFFIRMED. The district judge has had to endure substantial hardship in dealing with this case, and she should not be forced to visit it a third time. Circuit Rule 36 shall therefore apply on remand.
 
 
 
 [1]
 The RCPA's motion was actually titled "Request for Reconsideration" and did not reference Rule 59(e). However, because the motion was filed within ten days of the entry of the judgment dismissing the case, the district court treated the RCPA's motion as a Rule 59(e) motion, see Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 750 (7th Cir.1995); Lawshe v. Simpson, 16 F.3d 1475, 1477 n. 1 (7th Cir.1994), and so shall we
 
 
 [2]
 We are not presented with the question of whether the RCPA meets the first prong of the Hunt test: that the RCPA's members who retired after December 31, 1987, but before August 23, 1989, "would otherwise have standing to sue in their own right." Hunt, 432 U.S. at 343, 97 S.Ct. at 2441. The district court specifically declined to address this question, relying instead on its conclusion that the RCPA had failed to meet the second and third prongs of Hunt
 
 
 [3]
 A third conflict noted by the district court does not strike us as a conflict. The district court found that even though most of the RCPA's members pay more for their health care benefits now than they did prelitigation, they would pay significantly more if the RCPA were successful in invalidating the settlement legislation which obligated the City to subsidize 50 percent of the premiums until 1997 but were unsuccessful in arguing that the City must provide prelitigation coverage at prelitigation cost. This does not present a conflict of interest but rather the risk inherent in the litigation. If the RCPA were successful in arguing that the City is obligated to provide the prelitigation coverage at prelitigation cost, those members would certainly pay less
 
 
 [4]
 The RCPA's 1990 annual report discloses that Jones is the RCPA's secretary and only one of three officers
 
 
 [5]
 Some confusion exists in the record because there are two orders referring the sanctions requests to the magistrate judge, and they were made under two different statutory provisions. The first referral order referenced 28 U.S.C. § 636(b)(3), and the second referral referenced § 636(b)(1)(A). In both, the district judge ordered the magistrate judge "to prepare a report and recommendation."
 A report and recommendation, however, is inappropriate under § 636(b)(1)(A) because the magistrate judge is the actual decision maker. The statute describes a magistrate judge's determination under that section as an "order." § 636(b)(1)(A). A litigant may request that the district judge reconsider the order, but the district judge may only do so where the order is shown to be "clearly erroneous or contrary to law." Id. On the other hand, a report and recommendation is appropriate under § 636(b)(1)(B) or (b)(3), where the magistrate judge's role is that of an advisor and the district judge is the actual decision maker.
 Although the magistrate judge later titled his sanctions determinations as recommendations (the first was an order), the district judge reviewed them under the clear error standard reserved for orders under § 636(b)(1)(A). Consequently, the district judge confirmed her intent to treat the sanctions referral under § 636(b)(1)(A), and we shall review the sanctions determinations as being referred under that subsection. Even though a report and recommendation is inappropriate under that subsection, we shall refer to those portions of the record titled as such for purposes of clarity within the rather voluminous record.