107 F.3d 448
 37 Fed.R.Serv.3d 164, 41 U.S.P.Q.2d 1798
 SQUARE D COMPANY, a Delaware Corporation, Plaintiff-Appellee,
v.
FASTRAK SOFTWORKS, INCORPORATED, a Wisconsin Corporation, P
& J Associates, Incorporated, a Delaware
Corporation, Joseph R. Luft, et al.,
Defendants-Appellants.
 No. 96-2535.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 10, 1997.
Decided Feb. 7, 1997.*
 
 Paul Medved, Scott James Campbell, argued, Michael, Best & Friedrich, Milwaukee, WI, for Plaintiff-Appellee.
 Robert B. Corris, argued, Milwaukee, WI, Howard B. Tolkan, McCarthy, Lenz, Doyle & Tolkan, Milwaukee, WI, for Defendants-Appellants.
 Before POSNER, Chief Judge, RIPPLE and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 This case is an appeal from an order of the district court granting a preliminary injunction. The district court ordered Gray Soft, through its former president (Mr. Paul Ayers, now a consultant to P & J Associates) to deliver to Square D a copy of a source code for a computer program. P & J Associates ("P & J"), also defendants, filed a motion for reconsideration of the district court's order. In addition, P & J filed a notice of appeal of the preliminary injunction. The district court has not yet ruled on that motion. Because P & J's notice of appeal is premature due to the pendency of the motion for reconsideration in the district court, we must dismiss this case for want of appellate jurisdiction.
 
 
 2
 * BACKGROUND
 
 A.
 
 3
 Square D, a computer hardware and software seller, entered into a software development and licensing agreement with Gray Soft, a software company. The agreement required the two companies each to contribute intellectual property for the development of a software package that would allow purchasers of Square D's hardware to program their Square D machines using IBM-compatible personal computers. The agreement also provided that Square D had the exclusive right to sublicense the software to its customers. Gray Soft, for its part, undertook to provide software support and therefore was obliged to remedy any program "bugs" that might become apparent. Finally, the agreement called for Gray Soft to escrow a copy of the latest version of the software in order to ensure that, in the event of the termination of the contract or other default, Square D could obtain a copy of the latest version of the source code and therefore continue to provide software support to its customers. Although the escrow costs were to be paid by Gray Soft, Square D was to reimburse half of these expenses. Square D never provided that reimbursement.
 
 
 4
 The version of the program at issue is version 2.05 ("v.2.05"). After v. 2.05 was completed in December 1994, a Square D engineer met with an employee of Gray Soft. The Gray Soft employee placed the source code in an escrow box and assured the engineer that the source code would be placed in escrow at the agreed-upon bank. Despite this representation, the source code was never turned over to the bank.
 
 
 5
 During the summer of 1995, Gray Soft experienced credit problems, and one of its creditors, Park Bank, obtained a judgment of replevin. Park Bank eventually sold some of Gray Soft's assets, including the computer software and source code, to P & J, a company formed by former Gray Soft employees. Square D brought this action to obtain a copy of the source code. It claims that the source code should have been escrowed and that the code is essential to ensure that it has the capacity to provide software support to its customers.
 
 B.
 
 6
 The district court held an evidentiary hearing on Square D's request for a preliminary injunction to require the delivery of the source code. The court concluded that Square D was entitled to this relief. First, there was, according to the court, some likelihood of success on the merits. That is, the court determined that Gray Soft had breached the license and escrow agreements and that Square D had a contractual right to the escrowed source code. It further held that Square D's failure to reimburse Gray Soft $750 in escrow costs was not a material breach that would excuse Gray Soft's performance. In the court's view, moreover, there was no adequate legal remedy for the harm caused Square D by not being able to provide adequate customer support. The court further concluded that the balancing of harms weighed in favor of Square D because any harm caused to P & J was a result of Gray Soft's wrongful deprivation of the software code to Square D. Finally, the court determined that the public interest was probably not affected by the injunction. In issuing the preliminary injunction, the district court did not order Square D to post a bond.
 
 II
 DISCUSSION
 
 7
 We are unable to reach the merits of this appeal because of the pendency of the motion for reconsideration before the district court. Rule 4(a)(4) of the Federal Rules of Appellate Procedure provides that a notice of appeal is rendered ineffective while certain specified motions are pending before the district court. One of the motions that renders a notice of appeal ineffective is a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure.[1] The "motion for reconsideration" filed by P & J was such a motion. See Financial Servs. Corp. v. Weindruch, 764 F.2d 197, 198 (7th Cir.1985) (per curiam) (holding, in the context of a preliminary injunction, that a motion for reconsideration is a motion to alter or amend the judgment if the motion is filed within the ten-day period after the entry of the order).[2] Filed within the ten-day requirement of Rule 59(e), the motion requested that the order of the district court be amended to include P & J as a party subject to the order and to require that Square D make license fee payments.
 
 
 8
 Because this case is still before the district court and not within our appellate jurisdiction, we must dismiss the appeal. There will be further proceedings in that court on the motion for reconsideration. We therefore respectfully invite the attention of our colleague in that court to the possibility that the position of the parties with respect to the requested relief may well have changed during the pendency of this appeal and that this change might affect the nature of the relief that ought to be granted. During oral argument in this court, the parties informed us that no stay of the district court's order had been sought and that, in compliance with the terms of the preliminary injunction, the source code had been delivered to Square D. Further colloquy with counsel raised the real possibility that, at this juncture, P & J may be more interested in securing a monetary judgment from Square D than in securing the return of the code and any copies that may have been made. Prudence requires that we be cautious in holding counsel to precise factual representations about non-record matters that arise during the course of appellate argument. However, in light of these developments, the district court will no doubt want to reassess the situation before entering an order with respect to further relief. See Honig v. Students of Cal. Sch. for the Blind, 471 U.S. 148, 149, 105 S.Ct. 1820, 1820, 85 L.Ed.2d 114 (1985) (per curiam); University of Texas v. Camenisch, 451 U.S. 390, 393, 101 S.Ct. 1830, 1832-33, 68 L.Ed.2d 175 (1981). Although the entire case may not be moot, the need for injunctive relief may well present a very different situation than the one that confronted the court when it entered its order granting a preliminary injunction. See Church of Scientology v. United States, 506 U.S. 9, 11-14, 113 S.Ct. 447, 449-50, 121 L.Ed.2d 313 (1992) (noting that availability of a possible remedy is sufficient to prevent case from becoming moot); Honig, supra (holding that the appropriateness of an order granting a preliminary injunction was moot and remanding the case for further proceedings on the underlying action); Camenisch, supra (same); Haley v. Pataki, 60 F.3d 137, 140 (2d Cir.1995) (same). The issue of whether a claim for specific injunctive relief is moot is a fact-specific one, see In Re Andreuccetti, 975 F.2d 413, 418 (7th Cir.1992), that requires the court to assess not only the adjudicative facts of the case but also the probable impact of the requested relief on that factual situation. We express no opinion as to the proper disposition in this case, but simply invite our colleague's attention to the fact that the situation may well have changed since the parties were before him last.
 
 Conclusion
 
 9
 Accordingly, the appeal is dismissed for want of appellate jurisdiction.
 
 
 10
 APPEAL DISMISSED.
 
 
 
 *
 This opinion was originally released in typescript form
 
 
 [1]
 It is well established that an order of the district court granting an injunction is a "judgment" for purposes of Rule 59(e). See Fed.R.Civ.P. 54(a); Financial Servs. Corp. v. Weindruch, 764 F.2d 197, 198 (7th Cir.1985) (per curiam)
 
 
 [2]
 See also Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 n. 1 (7th Cir.) (noting that because motion for reconsideration was filed within ten-day period, the motion was considered a Rule 59(e) motion), cert. denied, --- U.S. ----, 117 S.Ct. 305, 136 L.Ed.2d 222 (1996); Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 750 (7th Cir.1995) (same)